# REPORTS OF CASES

# THE SUPREME COURT,

## JANUARY TERM, 1870.

### No. 2,207.

EDWARD CHRISTY, Petitioner, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF SACRAMENTO, Respondent.

Statutory Construction. — Repeal of a Statute. — A statute may be repealed by express words, or by necessary implication. The latter takes place whenever, by subsequent legislation, it becomes apparent that the Legislature did not intend the former Act to remain in force.

Idem. — Unconstitutional Provision. — If the Legislature attempt to incorporate in a statute, which it is within their undoubted power to enact, an unconstitutional provision, the only result would be that that portion of the Act would be void, but in no other respect would the validity of the Act be impaired.

Idem. — The Act of 1868 (providing for the election of Supervisors in Sacramento County), repealed so much of the Act of 1863 as authorized an election to be held for three of the districts in 1869, and the ballots cast at that election, for Supervisors for those three districts, were void.

Constitutional Law. — When the Constitution declares an office to be elective, it cannot be filled in any other mode.

Idem. — Term of Office. — But when office has been filled by an election, the Legislature may extend the term of the incumbent; provided the whole term, when extended, does not exceed the time limited by the Constitution.

THIS case arose upon a petition to the Supreme Court, in the exercise of original jurisdiction, for a writ of mandate, to compel the Board of Supervisors of Sacramento County

to canvass the votes cast for Supervisors in the third, fourth and fifth districts of that county, at the general election in 1869.

The case is stated in the opinion.

*Geo. Cadwalader* and *R. E. Clark*, for Petitioner.

*First*—Section 5, of Article XI, provides that "the Legislature shall have power to provide for the election of a Board of Supervisors in each county."

While section six, of the same article, declares that "all officers, whose election or appointment is not provided for by this Constitution, * * * * shall be elected by the people, or appointed, as the Legislature may direct."

Thus the Legislature is enjoined to establish a Board of Supervisors for each county, by election in each county, and are restricted from appointing them, just as they are restrained from appointing Supreme Justices and other incumbents of elective offices, such as County Clerks, District Attorneys and Sheriffs, etc.

It then being settled by the Constitution, and in harmony with the idea of "local self-government," that the Legislature is prohibited from appointing incumbents to the elective constitutional offices, it follows that an attempt of the Legislature to appoint, in joint convention or by law, for the people of a county their Supervisors, Clerks, District Attorneys, Sheriffs, Assessors or Collectors, produces no effect; that is, their act is null, abortive and void, and the right of election remains with the people as fully as if the Legislature had not made the appointment.

Can the Legislature appoint Supervisors? is not dissimilar to the question, Can the Legislature appoint Tax Collectors? Both are officers named in the Constitution, and both offices are elective. This Court has established the principles by which the question may be answered, in *People* v. *Kelsey* (36 Cal. 470); *People* v. *Hastings* (29 Cal. 459.) See, also, *The State* v. *Kennon* (7 Ohio State R. 546.)

*Second*—Was there a law authorizing the electors of the third, fourth and fifth districts, respectively, to elect Supervisors to serve between October, 1869, and October, 1871?

The election faculty came from the seventh section of the Act of 1863, which, as to Supervisors, authorized the district electors to meet and elect Supervisors of the first class on the tenth day after the passage of the Act; and provided that their successor should be elected at the general election of 1865, and at the general election each two years thereafter.

In the regular recurring order of things, these biennial general elections came along—the first in the fall of 1867, and the second in the fall of 1869. It was at this last period that the district electors voted for and elected the persons named in the petition.

Again, section four of the General Election Law (1 Hittell, 2424), says : "All vacancies existing, or which are about to occur, or which may occur in office by the expiration of the full term thereof, * * * shall be supplied at the general election."

And under this, the full terms of Bailey, Meredith and Beckman, about to expire in October, 1869, authorized the electors to supply their successors at the general election of 1869, and such election would not be a special one, requiring the proclamation of the Governor to give it validity. (*Westbrook* v. *Rosborough,* 14 Cal. 189.)

Hence we have a double authority for the election of 1869, where but a single one is needed.

Authority to occupants of constitutionally elective offices to hold over after the expiration of their terms, cannot be granted by the Legislature, and can only result, in the first place, from the failure of the people to elect, or the officer elected to qualify, and, in the last place, from the failure of the Legislature to provide for an election.

In this case it is evident that the Legislature has not prohibited the district electors from voting for Supervisors for the third, fourth and fifth districts, at the general election of 1869, except by the unconstitutional act of *filling the offices with their own appointees.*

If the Court holds that the Legislature can appoint Supervisors for Sacramento County—they have done so, and thereby made the offices full—and consequently prevented

the district electors from electing; but on no other theory can our case be defeated.

*Jo Hamilton*, Attorney General, *Jas. C. Goods*, District Attorney, and *Daniel Thomas*, for Respondent

It is well settled that the Constitution of a State is not a grant of power to the Legislature, but that, on the contrary, it has, naturally and by inherent right, all the power and privileges which the British Parliament possesses, and may do any act or pass any bill it deems proper, except where it is restrained by the Constitution; and it is only restrained by it, so far as the restriction appears, either in express terms or by necessary implication. (*Ex parte McCarthy*, 29 Cal. 395; *People* v. *Rodgers*, 13 Cal. 165; *People* v. *Coleman*, 4 Cal, 49; *People* v. *Seymour*, 16 Cal. 332; *People* v. *Brooks*, 16 Cal. 39; *Thompson* v. *Williams*, 6 Cal. 89; *People* v. *Bigler*, 5 Cal. 27; *Nougues* v. *Douglas*, 7 Cal. 70.)

If, for the purpose of the argument, we admit that the last sentence of the statute—that is, the whole offensive matter contained in the last seven lines, viz: "the present Supervisors, from the first and second districts, shall hold office until the first Monday in October, 1869, and until their successors are duly elected and qualified; and the present Supervisors, from the third, fourth and fifth districts, shall hold office until the first Monday in October, 1871, and until their successors are duly elected and qualified," is unconstitutional and void, it does not help the case of the relator, or give him any rights either here or at the polls. Such striking out will in nowise emasculate or mutilate the law, but will leave standing a perfect section dividing the county into Supervisor districts, and providing for the election and term of office of the Supervisors. Do the opposite party claim that such an Act is unconstitutional? Do they claim that an Act cannot be void in part and the constitutional portion remain in force? Nothing in *Robinson* v. *Bidwell* (22 Cal. 378) seems to justify such a claim, and I can find nothing stronger on the side of our opponents.

The relator gains no right by being voted for at an elec-

tion not provided for by law.   The Constitution is inert—is in abeyance until brought into activity by legislative power. It does not, *ex proprio vigore*, create or establish any local, county or municipal governments; but provides that they shall be created and established by the Legislature, and there drops the subject.   (*People* v. *Provines*, 34 Cal. 520.)

In respect to public corporations, which exist only for public purposes—as counties, cities and towns—the Legislature, under proper limitations, has a right to change, modify, enlarge or restrain them.   (*Marietta* v. *Fearing*, 4 Ohio, 427–32, citing 2 Kent's Com. 245.)   Political powers conferred upon a corporation for the local government of a place, may be abrogated by the Legislature, either by general or special Act altering the powers; and no individual member of the community can object to such an Act altering, modifying or abrogating any power or franchise conferred upon the corporation.   (*People* v. *Morris*, 13 Wend. 325; *Sloan* v. *The State*, 8 Blackf. 364.)

If there is no legal vacancy, any election held is illegal and void.   If every voter in the township had voted it would have made no difference.   (*Commonwealth* v. *Baxter*, 35 Penn. 264.)   And it has never before been pretended that a person could make title to an office through the popular vote, unless such vote was cast in pursuance of legislative regulation and authority.   All the efficiency given to the act of casting a ballot is derived from the law-making power, and through legal enactments; and the Legislature must provide for and regulate the conduct of an election, or there can be none. (*McKune* v. *Weller*, 11 Cal. 61; *Satterlee* v. *San Francisco*, 23 Cal. 320; *Dickey* v. *Hurlburt*, 5 Cal. 343; *People ex rel. McDougall* v. *Johnson*, 6 Cal. 673.)

We believe the Legislature had power to extend the term of office; but if not, it is, in our opinion, clear that there was nothing authorizing any election for Supervisors to be held in the third, fourth and fifth Sacramento districts, on the first Wednesday in September, 1869, and there being no legal authority to hold the election, the pretended votes cast on that day for relator, for Supervisor, were a nullity, and

formed no part of the matter that the law requires respondents to canvass.

It is a matter of indifference to the relator by what authority the present incumbents hold office; he was not elected at any authorized election and has no claim.

CROCKETT, J., delivered the opinion of the Court:

By an Act of the Legislature, passed in 1863, Sacramento County was divided into five districts, in each of which a Supervisor was to be elected, to hold his office for two years and until his successor should be elected and qualified. (Stats. 1863, p. 503.) The elections were, therefore, to be biennial, and all the five offices were to become vacant at the same time. Under the provisions of this Act, five Supervisors were elected at the general election in 1863, whose terms expired on the first Monday of October, 1865. At the general election of that year, their successors were elected, whose terms expired on the first Monday of October, 1867; at the general election in which year, Bailey, Meredith and Beckman were elected Supervisors for the third, fourth and fifth districts, respectively, and entered on their terms of office on the first Monday of October of that year. If the law had not been changed, their terms would have expired on the first Monday of October, 1869, and their successors would have been regularly elected at the general election of that year. But, in March, 1868, the Legislature deemed it proper to provide that the term of office of the Supervisors should be four years, instead of two; and that all the Supervisors should not be elected at the same time. Hence, by an Act passed on the 28th of March, 1868, it was provided that "the Supervisors for the first and second districts should be elected at the general election to be held in 1869, and should hold their offices for four years, and until their successors were elected and qualified; and that the Supervisors for the third, fourth and fifth districts should be elected at the general election to be held in 1871, and should also hold their offices for four years. It was further provided, that the present Supervisors from

the first and second districts shall hold office until the first Monday in October, 1869, and until their successors are duly elected and qualified; and the present Supervisors from the third, fourth and fifth districts shall hold office until the first Monday in October, 1871, and until their successors are duly elected and qualified." (Stats. 1867–8, p. 478.)   At the general election in 1869, Supervisors were duly elected under this Act for the first and second districts; and under the belief that the terms of Bailey, Meredith and Beckman would also expire' on the first Monday of October, 1869, some of the voters cast ballots for other persons to fill these offices for the third, fourth and fifth districts, for a term to commence on the said first Monday in October; but the Board of Supervisors refuses to canvass the votes cast for Supervisors for said third, fourth and fifth districts, on the ground that there was no vacancy in these offices; and that, under the Act of March 28, 1868, Bailey, Meredith and Beckman are entitled to remain in office until October, 1871, and consequently that no election for their successors could be lawfully held in 1869, nor until the general election in 1871.

The present action is an application to the Court for a writ of mandate to compel the Board of Supervisors to canvass the votes so cast, and to declare the result.

The argument in support of the application for the writ is based upon two propositions, to wit: First—That so much of the Act of March 28, 1868, as provides that the present incumbents shall continue in office until October, 1871, is in violation of Section 5, Article XI, of the Constitution, which declares that "the Legislature shall have power to provide for the election of a Board of Supervisors in each county." It is claimed that the Legislature ignored this provision, in attempting, by a legislative appointment, to continue these Supervisors in office after the term for which they were elected had expired; and that the Legislature has no more power to extend the term of the incumbent of an office, which, under the Constitution, is elective, than it would have to appoint him originally; and that this portion of the

Act of March 28, 1868, is therefore void. Second—This provision being stricken out as void, there is nothing in the Act which, by implication or otherwise, can be held to repeal that portion of the Act of 1863 which authorized an election to be held in 1869 for Supervisors for the third, fourth and fifth districts, as successors to Bailey, Meredith and Beckman, whose terms expired in October, 1869, unless the Act of 1868 had the effect to continue them in office until October, 1871; and that it could not have that effect, for the reason that it is repugnant to the Constitution and void.

We shall first consider the proposition last stated. If it be assumed that the Legislature had no power to continue the incumbents in office beyond the term for which they were originally elected, does it therefore follow, as a necessary or proper legal conclusion, that so much of the Act of 1863 as authorized an election to be held in 1869 for Supervisors in the third, fourth and fifth districts, remained in force? A statute may be repealed by express words, or by necessary implication. The latter takes place whenever, by subsequent legislation, it becomes apparent that the Legislature did not intend the former Act to remain in force. If a later statute be wholly repugnant to an older one, so that, upon any reasonable construction, they cannot stand together, the first is repealed by implication, though there are no repealing words. The reason is, that the last expression of the legislative will must prevail, and must supersede all prior legislation which is entirely inconsistent with it. Applying this rule to the case we are considering, nothing can be plainer than that the Legislature intended to declare by the Act of March 28, 1868, that no election for Supervisors for the third, fourth and fifth districts should be held in the year 1869. If the Act had made this declaration in express terms, and had further provided that the next election for those districts should be held at the general election in 1871, and had omitted the provision continuing the incumbents in office, the intention would not have been more apparent than it is that there should be no election for those districts in 1869, and that the next election should occur in 1871. Can anyone doubt the power of the Legislature thus to

regulate the *time* at which the election should be held? It was only by virtue of the Act of 1863 that an election could have been held in 1869. Was it not competent for the Legislature to change the time? Their power to do so is unquestionable, and the only remaining question is, Did they declare this intention by the Act of 1868? It is perfectly plain that such was the evident purpose of the Act. If, in addition to the exercise of this undoubted power, they have coupled with it an attempt to perform an unconstitutional act, by continuing the incumbents in office until October, 1871, the only result would be that the attempt would be abortive, and that portion of the Act would be void. But this result would in no degree impair the efficiency of the Act as a valid enactment, changing the *time* of the election from 1869 to 1871. We are, therefore, clearly of the opinion that the Act of 1868 repealed so much of the Act of 1863 as authorized an election to be held for these three districts in 1869, and that the ballots cast at that election for Supervisors for said districts were void. This view of the case renders it unnecessary, perhaps, for us to express any opinion on the constitutional question. But, inasmuch as it is one of considerable practical importance, we deem it best to dispose of it now.

When the Constitution declares an office to be elective, it cannot, of course, be filled in any other mode than that provided by the instrument itself. We have repeatedly recognized this proposition as applied to Assessors and Collectors of Taxes. (*People* v. *Hastings,* 29 Cal. 449; *People* v. *Kelsey,* 34 *Id.* 470.)

But where an office has been filled in the method prescribed by the Constitution, no reason is perceived why the Legislature may not extend the term of the incumbent; provided the whole term, when extended, does not exceed the time limited by the Constitution—Section 7, Article XI, of which, provides that ''when the duration of any office is not provided for by this Constitution, it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment; nor shall

the duration of any office, not fixed by this Constitution, ever exceed four years." An officer duly elected by the people, and holding his office for a term extended by the Legislature within the constitutional limitation of time, cannot, in any just sense, be held to hold, not as an elected officer, but as an appointee of the Legislature. It cannot be denied that he was *elected* to the *office*, and that he would not be the incumbent of it, except for his election. The people have exercised their constitutional right in selecting him for the office, and instead of thwarting the popular will by appointing some one else, the Legislature has rather ratified it by extending his term. The duration of the terms of office, except as limited by the Constitution, is a matter of purely legislative discretion. It may be diminished or extended at the will of the Legislature, within those limits, and his power in no degree trenches on the constitutional right of the people to select the person who is to fill an elective office. The people select the incumbent of the *office*, but the Legislature has the power to define the duration of the term, provided it is not fixed by the Constitution, and is within the constitutional limitation of four years. If we had any doubt on this point, we should be very reluctant to arrive at a different conclusion, in view of the serious complications which might arise, growing out of past legislation on this subject. The Legislature has so often exercised, unquestioned, the power to prolong the terms of the incumbents of elective officers, that it might result in the most embarrassing perplexities, if all these acts, at this late day, were pronounced to be void. They have repeatedly extended terms of Supervisors, Tax Collectors, Assessors and a county officers. (Stats. 1858, p. 261; 1862, p. 129; 1863, p. 171; 1859, p. 236; 1861, p. 260; 1859, p. 337; 1863, pp. 406, 387, 24, 506; 1857, p. 281; 1863–4, p. 507; 1867–8, pp. 121, 457.)

Nothing but an imperious sense of duty, founded on the plainest principles of constitutional construction, would justify us in holding all these acts to be void after this lapse of time. If we had even a grave doubt on the subject, consid-

crations of public policy would impel us to uphold these enactments, if practicable.

The application for the writ is, therefore, denied.