A. N. J. CROOK

*v.*

THE PEOPLE *ex rel.* William Jayne.

*Filed at Springfield March 29, 1883.*

1. MUNICIPAL CORPORATION—*charter subject to repeal.* Municipal charters are subject to repeal or amendment, at the pleasure of the legislative power granting them.

2. SAME—*effect of repeal on tenure of office.* The absolute and unconditional repeal of a municipal charter abolishes all offices under it, and the substitution of another charter with inconsistent provisions, without any saving clause as to the rights of officers under the former charter, will have the same effect.

3. SAME—*no vested right in municipal office.* There is no such thing as a vested right, in the strict sense of that term, in a municipal office, that places it above legislative control. The same power that creates such an office can abolish it.

4. CITIES AND VILLAGES—*reorganization under general law—effect on tenure of offices under special charter.* The adoption of the general law of 1872 for the incorporation of cities and villages, by a city organized under a special charter, is an abrogation of the special charter, and determines the tenure of all offices under the special charter, except such as are within the saving clause of the general act.

5. SAME—*what offices provided for in general law—and how others may be created.* Under the general Incorporation law, provision is made for the election only of a mayor, a city council, a city clerk, a city attorney, and a city treasurer. All other offices that may be deemed necessary or expedient for the city government must be provided for by the city council, and the officers to fill them are to be either elected by the legal voters, or appointed by the mayor, with the approval of the city council, as shall be provided by ordinance.

6.  SAME—*what officers hold over on adoption of general law.*  The "officers in office" at the time of the adoption by a city of the general incorporation act, that "shall exercise the powers conferred upon like officers" in the general law until their successors shall be elected and qualified, are those holding under the special charter that answer to the same officers provided for in the general act.  All other offices are abolished *eo instanti* by the adoption of the general law.

7.  SAME—*who are "the city officers then in office" who may continue to exercise their powers until their successors shall be elected and qualified.* The latter clause of section 3, article 1, of the general Incorporation law, providing that on the adoption of that act by a city previously under a special charter, "the city officers then in office" shall exercise the powers conferred upon like officers in the general law until their successors shall be elected and qualified, means that the city officers elected at the preceding annual election shall remain in office until their successors are elected and qualified, and not those who may have received the greatest number of votes at the same election by which the general act is adopted.

8.  On the adoption of the general Incorporation act by a city before acting under a special charter, persons receiving the greatest number of votes for the offices of mayor and aldermen at such election can not qualify as such, for the reason the charter under which such votes were cast has ceased to exist.  The old charter ceases to exist at the close of the election at which the general law is adopted.

9.  SAME—*extending term of office, within the constitutional prohibition —under the general Incorporation law.*  The general Incorporation act of 1872 for cities and villages, in continuing in office the mayor and aldermen who were elected prior to the adoption of that act until their successors shall be elected and qualified, is not repugnant to section 28, article 4, of the constitution, which provides, "no law shall be passed which shall operate to extend the term of office of any public officer after his election or appointment." While it is true such officers may have been elected for a definite time, they were also elected to hold their offices until their successors should be elected and qualified.

10.  SAME—*after reorganization, duty of those "then in office" to call an election, etc.*  Where, at the time for the election of city officers, the voters of such city adopt the general Incorporation law, persons receiving votes for the offices of mayor and aldermen at such election will not be entitled to those offices, and it then becomes the duty of those officers "then in office" to take steps to put in operation a city government under the general law, by dividing the city into the proper number of wards, and calling a special election.  Should this duty be neglected, it might be compelled' by *mandamus.*

11.  SAME—*of the power to call special election for city officers.*  Section 14, article 4, of the general Incorporation act for cities and villages, confers the power on the city council to call a special election, in all cases when

necessary for the purposes of the act under which the city has just been incorporated. That power does not depend upon the fact of a failure to elect officers on the day appointed in that act.

12. QUO WARRANTO—*of the pleadings—requisites of the plea of the respondent.* On an information in the nature of a *quo warranto* against one exercising the office of mayor of a city, it is incumbent on the respondent to show title to the office to prevent judgment of ouster. But in such a case, involving public interests, mere technical objections to the plea will not be regarded. It is not necessary in the plea to deny the relator's right to the office, when the facts stated show he has no such right.

13. In such case, the plea of the respondent, showing his election to the office of mayor, stated that the special election was called in pursuance of an ordinance passed by the city council after the adoption of the general Incorporation act, such council being in office at the time the general law was adopted: *Held*, that the plea was not obnoxious to the objection that it failed to show by whom the special election was called, and that, the authority to call the same existing in public law, it was not necessary to specially plead it.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. PALMERS, ROBINSON & SHUTT, for the appellant:

The adoption of the general law by the votes of the people was a repeal of the special charter of the city. The repeal abrogates all the offices, and determines the tenure of all officers who hold under the repealed act. (*People ex rel.* v. *Brown,* 83 Ill. 85.) The substitution of another charter with inconsistent provisions, without a saving clause as to such rights, will have the same effect.

Section 3, of the general law of 1872, provides that upon its adoption "the city officers *then in office* shall thereafter exercise the powers conferred upon like officers in this act until their successors shall be elected and qualified." The relator was not in office as mayor when the special charter of the city was abrogated and the general law substituted in its place. The office to which he was elected ceased with

the law creating it, and the saving clause applies to the mayor then in office,—not the one just elected under the repealed charter.

If McCreery was a city officer *then in office* when the city became organized under the act of 1872, his right to continue in office was saved by the third section,—if not, the office of mayor was left vacant. This consequence could not have been intended. Jayne could not qualify merely until his successor should be elected and qualified. He could not qualify for one year, or for any definite term, for the special charter authorizing it was abrogated.

All the authorities concur in the rule that officers elected and qualified for fixed terms, may, after the expiration of the terms, exercise all the powers and perform the duties of their offices until their successors are elected and qualified. It is one of their duties, when their action is necessary, to order an election, to give notice, or do whatever may be necessary in order to the election of their successors. *People ex rel.* v. *Trustees,* 51 Ill. 144; *People ex rel.* v. *Bartlett et al.* 6 Wend. 422.

The right to hold the office after the expiration of the term is conferred for the sake of the public, and for that reason a public officer can not found a right to hold one upon his own breach of duty. Dillon on Mun. Corp. 160.

It being the duty of the city officers (the mayor and city council) in office when the organization under the general law took effect, to order an election for their successors, the election ordered by them was valid, and conferred upon the persons elected, when qualified, a perfect title to the offices. The act of 1881, amending section 1, article 1, of the act of 1872, does not change the law in this respect. Under it it is still competent to order the election to be held on some other day than the day of the annual municipal election.

Messrs. McCLERNAND & KEYES, Messrs. BRADLEY & BRADLEY, Mr. R. H. HAZLETT, Mr. T. C. MATHER, Mr. S. D. SCHOLES, Mr. CHARLES P. KANE, and Mr. J. OTIS HUMPHREY, for the relator:

It is contended that the adoption of the general law had the effect to abrogate the special charter, and legislate out of office all persons elected under the latter. The general law provides that "all laws and parts of laws not inconsistent with the provisions of this act, shall continue in force, and be applicable to any city or village organizing under it," the same as if such change of organization had not taken place. Rev. Laws, 1877, p. 205, sec. 6. See, also, sec. 11.

It follows, then, that the charter, so far as it is not inconsistent with the general law, stands with and is a part of the latter, and the relator is "successor," in the terms and sense of the statute. Although the relator was not actually in office at the time of the adoption of the general law, yet he was an officer under the charter, as a part of that law, and had legal title to the office to which he was elected, which, in law, put relator in constructive possession of the same office.

The charter and ordinances of the city provide that "the persons having the highest number of votes for any office shall be declared elected." The city council only announced the result of the vote, without declaring who was elected.

A board of canvassers, whose duties are ministerial, may, by *mandamus,* be compelled to receive and count votes rejected by it. *Florida* v. *Gibbs,* 13 Fla. 55; *State* v. *County Judge,* 7 Iowa, 186; *Clark* v. *McKenzie,* 7 Bush, 523; *Kesler* v. *Cameron,* 39 Ind. 488; *State* v. *Dinsmore,* 5 Brown, 145; *Ellis* v. *County Commissioners,* 2 Gray, 370.

The writ lies to compel the proper officers to give a certificate of election to the person entitled. *State* v. *Judge,* 13 Ala. 815; *Strong, Petitioner,* 20 Pick. 484; *O'Farrell* v. *Colby,* 2 Minn. 180; *State* v. *Loomis,* 5 Ham. 358.

On *quo warranto* the respondent must show by what title he exercises an office. It is not enough to claim his election generally. 2 Potter on Corporations, 801, sec. 674; *Clark* v. *People,* 15 Ill. 217; Dillon on Mun. Corp. sec. 717.

The construction of appellant would make section 3 of the general law in conflict with the clause of the constitution inhibiting the passage of any law extending the term of any officer's office beyond that for which he is elected or appointed. Const. sec. 28, art. 4.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The information filed in this case is in the nature of a *quo warranto,* and was brought in the circuit court, in the name of the People, on the relation of William Jayne, against Ahaz N. J. Crook, to compel him to disclose by what authority he intruded himself into the office of mayor of the city of Springfield, and has since continued to exercise the duties and functions of such office. The facts of the case appear from the pleadings, and are not, therefore, a matter of contention. A concise statement will be necessary to an understanding of the legal questions discussed.

It is set forth in the information, that on the 4th day of April, 1882, and prior thereto, the city of Springfield was a municipal corporation, organized and existing under a special charter granted by the State, having such powers as are usually conferred on such municipalities; that the city, as such municipal corporation, was divided into six wards, by ordinance; that its city government consisted of one mayor and eighteen aldermen, being three from each ward, and such other officers as are usually appointed or elected by such municipalities; that on the 4th day of April, 1882, at an election for city officers under such special charter, the relator, William Jayne, received a majority of all the votes cast at such election for the office of mayor of the city; that on

the same day (the 4th of April, 1882,) the legal voters of the city, in pursuance of a notice given as required by law, voted for and against the incorporation of the city under the act of 1872 in relation to "cities and villages," and that a majority of the votes cast at that election were "for organization under the general law;" that the relator, Jayne, afterwards gave a sufficient bond, as required by the ordinances, and took and subscribed the usual oath of office, and that by reason of such election and so qualifying as the law requires, the relator became and was entitled to have and hold the office of mayor, to which it is alleged he had been chosen in the manner as above stated, and from thence receive the emoluments attached to such office. It is further alleged that afterwards Ahaz N. J. Crook did, by reason of an illegal and pretended election, usurp and intrude himself into the office of mayor of the city, and has since unlawfully held, and is now holding, such office, without authority of law.

In the plea filed to the information exhibited against him by respondent it is in substance stated, that on the 4th day of April, 1882, the question was submitted to the voters of the city of Springfield of incorporating under the act of 1872 in relation to "cities and villages," and that at such election a majority of the votes cast were in favor of "organization under the general law;" that afterwards, on the 13th day of April, in the same year, the city council, by ordinance, divided the city into seven wards, and on the 14th day of the same month, by an ordinance, ordered an election for such city officers as are provided for in the general law, to be holden on the 9th day of May next thereafter, and by the same ordinance fixed the places of voting in the several wards, and ordered notice of such election to be given, as the law requires. It was declared by the preamble to the latter ordinance such election was necessary to the purposes of the act of incorporation, the provisions of which had just been adopted by the voters. It is further averred in respondent's

plea, that such election was held, as appointed, on the 9th day of May, 1882, and that at such election respondent, Crook, received the highest number of votes cast thereat for the office of mayor of the city, and that the votes cast at that election were duly canvassed by the city council, and that respondent was declared duly elected to the office of mayor of the city, and he proceeded to qualify as such officer, and at once entered upon the discharge of the duties pertaining to such office, and has continued to discharge the duties thereof, by virtue of such election and qualification, as he lawfully might. To the plea alleging these principal facts, and others of minor importance, with the usual formality and definiteness, the demurrer interposed by the relator was sustained by the circuit court, and judgment of ouster pronounced. That judgment was affirmed in the Appellate Court for the Third District, and respondent brings the case to this court on appeal.

Before passing to the consideration of the title relator claims to the office of mayor, and the questions of law raised on the causes of special demurrer to the sufficiency of the plea to the information exhibited against respondent, some preliminary questions that are necessarily involved in the decision should be first determined.

It is familiar law that municipal charters are subject to repeal or amendment, at the pleasure of the legislative power granting them. It is equally well settled that the absolute and unconditional repeal of a municipal charter abolishes all offices under it. The substitution of another charter with inconsistent provisions, without any saving clause as to the rights of officers under the former charter, would have the same effect. It is for the reason there is no such thing as a vested right, in the strict sense of that term, in a municipal office, that places it above legislative control. The same power that creates such an office can undoubtedly abolish it. It is so obvious, it is not a matter of dispute that the vote in

"favor of organization" was an adoption by the city of Springfield of the act of 1872 in relation to "cities and villages," instead of or as a substitute for the special charter under which the city had previously been acting, and in so far as the provisions of the general law may be inconsistent with the special charter, the former becomes the controlling law for the city government. Section 6, article 1, of the act, declares, however, that all laws or parts of laws not inconsistent with the provisions of the general law, shall continue in force, and be applicable to any such city or village organized under it, the same as if such change of organization had not taken place.

It was decided by this court in *The People* v. *Brown*, 83 Ill. 95, that the reorganization of a city under the general Incorporation law of 1872 determined the tenure of all officers under its special charter, except such as were within the saving clause of that act. It will be perceived provision is only made in the general law for the election of a mayor, a city council, a city clerk, a city attorney, and a city treasurer. All other offices that may be deemed necessary or expedient must be provided for by the city council, and the officers to fill them are to be either elected by the legal voters or appointed by the mayor, with the approval of the city council, as shall be provided by ordinance. It must be understood, then, that the "officers in office" at the time of the adoption by any city of the general Incorporation act instead of or as a substitute for its special charter, "shall exercise the powers conferred upon like officers in this act until their successors shall be elected and qualified," applies only to officers holding under the special charter that answer to the same officers provided for in the general Incorporation act. All other offices are abolished *eo instanti* by the adoption of the general law. This construction was given to the statute in *The People* v. *Brown, supra,* and it is not understood either party makes any argument against its correctness.

Keeping these general principles and this construction of the statute in view, a clearer understanding can be more readily had of the latter clause of section 3, article 1, of the general Incorporation act, which has been the subject of so much argument and illustration.  The ambiguity arises out of the use of the words "the city officers. then in office."  It is concerning such officers it is provided they shall "thereupon exercise the powers conferred upon like officers in this act until their successors shall be elected and qualified."  As counsel tersely express it, the contention being what officers are meant by the expression "the city officers then in office."  Is it intended to mean the persons voted for, and who received a majority of the votes cast for certain officers on the same day of the voting for and the adoption of the general law, or does it mean the officers elected at the preceding annual election, and whose terms of office would expire as soon as their successors should thereafter be elected and qualified, and who were still holding and exercising the functions of their respective offices on the day of such vote for the reorganization of the city under the general law?  Unquestionably the latter persons are meant, and the argument that supports this construction is so apparent it need not be elaborated. Treating the expression "the city officers then in office," as descriptive of a class of officers who are "thereupon to exercise the powers conferred on like officers  *  *  *  until their successors shall be elected and qualified," it may be inquired who are the persons, and what qualifications must they have, to bring them within this description?  Plainly they must be city officers, and must *then* (that is, at the time of the adoption of the general law,) be "in office."  Of the persons claiming the several city offices, who are they that answer this description?  Only the officers elected and qualified at the previous municipal election in April, 1881. They were the only persons "*then* in office," and no other persons come within the statutory description.  A person

elected to a position would ·not be an officer, in the sense that term is used in the law, until he should thereafter be qualified, as the law directs, by giving bond and taking the oath of office when these acts are required by law. It can not be insisted, with any show of reason, that relator and certain aldermen, and who, like himself, received a majority of the votes cast at the election when the general law was adopted, were officers of the city at the close of the voting on that day. They had not then been qualified in conformity with the city ordinances, and it could not then be known that they ever would. First, they might decline to take upon themselves the burden of the offices to which they had been chosen, and therefore decline to qualify; and second, the charter under which they were chosen might be repealed or annulled, as it was, before they could qualify, and certainly they could not thereafter qualify under a charter that had ceased to exist. It is essential a person chosen should qualify before he becomes an officer, in the sense that term is used in the statute.

This view finds support in another consideration. The majority vote of the people "for city organization" was the adoption of the general law, and it was a perfected act when the vote closed on that day. Nothing thereafter remained to be done, and the old charter was, in fact, repealed. The repeal of the old charter was perfected, and it had ceased to exist before relator could be qualified, or before he offered to qualify. How, then, can it be said the persons voted for on the same day the general law was adopted by the legal voters of the city were "city officers then in office?" The proposition involves a legal solecism. It would seem, therefore, to follow, the persons elected and qualified at the previous municipal election, in 1881, and who were in office on the day the majority vote of the legal voters of the city was cast "for city organization under the general law," were "the city officers then in office" who should "thereupon exercise the

powers conferred upon like officers   *   *   *   until their successors shall be elected and qualified."

Two grounds are urged against the correctness of this construction: First, because the constitution of 1870 (sec. 28, art. 4,) provides "no law shall be passed which shall operate to extend the term of any public officer after his election or appointment," and the argument is, if the officers elected at the previous municipal election, in 1881, are the "officers" who shall exercise the powers conferred on like officers until their successors shall be elected and qualified, then the terms of their respective offices would be extended past the time for which they were elected, which is forbidden by the constitution; and second, because the persons that received the highest number of votes for the respective offices, cast for them on the day of the adoption of the general law, are the successors of the officers elected at the previous municipal election, and must, for that reason, be regarded as "the city officers then in office," within the meaning of the clause of the statute. Neither proposition can be maintained. That the "officers then in office" who shall exercise the powers conferred by the general law on "like officers," are *officers* in the sense that term is used in the constitution, no reasonable doubt is entertained. They are so denominated, and the functions they perform pertain to offices. But the argument on this branch of the case assumes for its support that which does not exist. It is not accurate to say the terms of the "city officers then in office" are or were extended for any period past the term for which they were elected, by virtue of any law or statute enacted by the General Assembly. Such is not the fact. It is true these officers were elected for definite periods, but it is also true they were elected to hold their respective offices until their successors should be elected and qualified. No statute or law provides that any of these officers shall or may hold their respective offices past the time their successors shall be elected and qualified, and until

the happening of that event it is lawful for them to hold their respective offices.

The second proposition also admits of a satisfactory answer. The "successors" of "the city officers then in office," undoubtedly means "successors" elected under the general law. Narrowing the meaning of the word "successors," as must be done by any fair construction of the statute, to "successors" to such officers to be elected and qualified under the general law, the case, in this respect, is relieved of all difficulty. The charter under which the relator claims to have been elected and qualified as mayor of the city, was repealed or annulled before he was, or could be, qualified as an officer under it. Thereafter he could not qualify under it, because it had then ceased to exist or be a law for the government of the city, or, indeed, any law at all. The relator, therefore, never became an officer of the city, and how could he be the "successor" of an officer if he was not himself an officer? As has been seen, it was indispensable before relator could be the "successor" of the mayor of the city "then in office," he must have been elected and qualified under the general law. That is not claimed for him. These considerations make it clear the relator himself has no title to the office of mayor, into which it is alleged respondent has intruded himself.

Passing now to the consideration of the question whether respondent has shown title to the office of mayor, the functions of which he now claims the right to exercise, it will be necessary to remark on the causes of special demurrer to his plea to the information exhibited against him, and in which he sets up his title to such office. The law makes it incumbent on respondent to show title to the office he claims the right to hold, or he must suffer judgment of ouster. On this branch of the case no mere technical objections will be entertained or regarded. The questions involved are of too much public importance to be made to depend on any grounds of mere faulty pleading. The facts alleged in the plea, if true,

and the demurrer admits them to be true, make it impossible the relator can himself have any title to the office in question, and no formal denial of his title is necessary to make it a good plea.    It is enough if the facts pleaded show relator has no title,—anything beyond that is mere redundancy.

It is said the plea is not sufficient because it does not allege by whom or by what authority the persons acting called the special election at which respondent was elected mayor, as he avers he was.    It appears the special election was called in pursuance of an ordinance passed by the city council on the 14th day of April, 1882.    It sufficiently appears the council that passed the ordinance was the council "in office" when the general law was adopted by the legal voters of the municipality.    That shows by "whom" the election was called, and their "authority" for calling it exists in public law, and it was not necessary to plead it specially.

Another objection confidently taken is, the plea does not show valid title to the office in question in respondent, for the reason it admits the reorganization of the city under the general law by a vote therefor on the 4th day of April, 1882, and as respondent's title to the office rests solely upon his election at a special election held on the 9th of May, 1882, unless such special election was authorized by the general law then it would be void, and would confer on respondent no title to the office of mayor.    The position is assumed that no contingency had then happened that would make it lawful for the city council to call a special election under the general law, which had become the law for the government of the city.    This, it is apprehended, is a misconception of both the law and the fact.    If the law, under the facts set forth in the plea, authorized a special election to be called, at which respondent could have been elected, it will be sufficient whether that conclusion is pleaded or not.    That, it is

thought, the law does authorize to be done.  It is averred that on the 4th day of April, 1882, at an election held in accordance with the act of 1872 in relation to "cities and villages," there was submitted to the legal voters of the city of Springfield the question whether the city would become incorporated under that act, and at that election a majority of the votes cast were "for city organization under the general law," whereby the city of Springfield became, then and there, on that day, incorporated under the general law in relation to "cities and villages."  It then became the duty of the "city officers then in office" to proceed to put in operation the city government under the general law.  That, the pleas show, they did do without any unreasonable delay,— first, by dividing the city into seven wards, as the law directs; and second, by fixing voting places in such wards, and calling an election of such officers as the general law authorized to be elected by the people,—all of which was done by ordinance.  That was the only way in which the form of city government which the people had lately adopted could be put in operation.

It was the plain duty of "the city officers then in office" to adopt measures to organize, consistently with law, the city government, and had they omitted that duty no doubt is entertained that they could have been compelled to go forward and perform it.  So far as the plea of respondent goes, it is insisted, it assigns or gives no special reason for holding the special election at which respondent was elected mayor. It is not understood it was necessary to assign any special reason or cause for holding such special election.  The plea does, however, set forth the facts that made it the duty of "the city officers then in office" to proceed at once to divide the city into wards, and call a special election to elect their successors, and among the powers expressly conferred by statute on the city council (sec. 14, art. 4,) is the power to call a special election in "all cases," when necessary for the

purposes of the act under which the city had just become incorporated. That was a sufficient warrant for calling the special election. It is wholly immaterial whether there had been a failure to elect officers on the day appointed for the regular municipal election. The power to call a special election in such cases does not depend on that fact alone. It may be done whenever it is necessary for the purposes of the act of incorporation. It is obvious that before any election could be held under the general law for the election of city officers, it was necessary the city should first be divided into wards, as that act directs shall be done, and voting places fixed and judges of election appointed. All that, had to be done by ordinance, and it could not be done in time to hold an election for city officers on the day fixed by the general law for holding such elections. It was therefore necessary, for the purposes of the act, a special election should be called and held for the election of city officers under the general law to be "successors" to the "city officers then in office," and for so doing the statute itself was a sufficient warrant.

It is unnecessary to extend this discussion further. Enough has been said to give expression to the views of the court on the principal questions discussed. The conclusions reached are, first, the relator has no title in law to the office of mayor, which he claims; and second, under the state of facts appearing in the plea of respondent, which the demurrer, of course, admits to be true, the statute warranted the calling of a special election for the election of the "successors" of the "city officers then in office," as was done, and as respondent was elected mayor of the city at such election, and thereafter qualified, as the law directs, his title to the office of mayor *is valid*.

The judgment of the Appellate Court will be reversed, and the cause remanded, with directions to that court to reverse the judgment of the circuit court, and remand the cause

to the circuit court, with directions to overrule the demurrer to the plea, and render judgment for respondent.

*Judgment reversed.*

Mr. Justice Dickey was not present at the argument of this case, and gave no opinion.