STATE OF NEBRASKA, EX REL. C. B. HENSLEY, RELATOR, v. JAMES PLASTERS, CLERK, RESPONDENT.

FILED OCTOBER 19, 1905. No. 14,468.

ORIGINAL application for a writ of mandamus to compel respondent to file certificate of nomination and place name of relator on election ballot. *Writ allowed.*

*E. N. Kauffman* and *M. B. Davis,* for relator.

*S. D. Killen, Samuel Rinaker, Norris Brown, Attorney General, W. T. Thompson* and *R. S. Bibb,* for respondent.

*Fawcett & Abbott, amici curiæ.*

PER CURIAM.

Writ of mandamus allowed.  Opinion to be filed later.

BARNES, J., *dissents.*

The following opinion was filed December 6, 1905:

1. **Officers: LEGISLATIVE POWER.** The legislature cannot appoint county officers, nor by an act solely for that purpose extend the terms of such officers.

2. **Constitutional Law.** Chapter 47 of the laws of 1905 is unconstitutional and void.

SEDGWICK, J.

The last legislature enacted what was known as the biennial election law, the purpose of which was to dispense with annual elections and to provide for the holding of a general election on each alternate year.  The act in express terms provided for the filling of many offices by election in the year 1906, which elections would otherwise have been held in the year 1905.  The office of register of deeds was expressly included in this provision.  The statute was held to be unconstitutional in *State v. Galusha, ante,* p. 188.  There were also several independent acts of the legislature making precisely the same provisions for various different offices, among them being chapter 47, laws 1905, which provides for the office of register of deeds.  This chapter purports to amend section 77a, article I, chapter 18, Compiled Statutes, 1903. This section was originally enacted in 1887, amended in 1889, and as so amended it provided that "at the general election in the year 1889, and every four years thereafter, a register of deeds shall be elected in and for each county having a population of eighteen thousand and three (18,003) inhabitants or more, to be ascertained by the census of 1885, and each state and national census there-

after," etc. It contains at length provisions in regard to the fees of the register of deeds, varying in different counties according to the number of inhabitants of the county. The only change made by the act of 1905 in question was the insertion of 1906 instead of 1889, so that the section should read: "At the general election in the year 1906, and every four years thereafter," etc. By the act of 1887 the office was created, and it was provided that the election should be held at the general election of that year, and every two years thereafter, so that the next election of the register of deeds would take place in the year 1889, which was not changed by the act of 1889. The term, however, by the latter act was extended four years, and, by its provision that a register of deeds should be elected every four years thereafter, the election of the register of deeds would take place in 1905. If, then, this act of 1905 is valid, the effect would be to prevent the holding of an election for register of deeds in 1905, and to provide for the election of that officer in 1906, thereby extending the term of the officers now holding for the period of one year. The county clerk of Gage county refused to file the certificate of nomination of the relator as a candidate for the office of register of deeds, and refused to cause his name to be printed upon the official ballot as such candidate, to be voted for at the election of 1905, and these proceedings were brought to obtain a writ of mandamus to compel him to do so. If the act in question is valid, the county clerk was right in his refusal, as there could be no election of register of deeds in the year 1905.

1. In the argument the constitutionality of the act was attacked upon several grounds. It was insisted that the sole purpose of this legislation was to provide for biennial elections; that this act was a part of the scheme of the legislature mainly set forth in the more comprehensive act above referred to, but supplemented by several acts that manifestly had no purpose, except to assist in the general object to do away with annual elections. From

this premise it was argued that this act was unconstitutional, because the inducement for its enactment has failed with the failure of the more comprehensive act. To this it was objected that the court is never at liberty to look to one act of the legislature for the inducement to another act. If the court could know that the sole inducement to the act was to assist in carrying out the provisions of a general act of the legislature, enacted at the same time, that has been found to be unconstitutional and void, it would, of course, hold this act unconstitutional also. The argument is that the court cannot know this to be the case, but, on the other hand, must presume that the legislature had some sufficient motive in enacting a law which is complete in itself. This seems to us somewhat like a relic of the earlier days, when courts continually presumed things to exist which they knew did not exist. We do not find it necessary to pass upon this curious question, since the statute must be held invalid for another reason.

2. Another objection urged against the constitutionality of the act was that the legislature has no power to extend the terms of the present incumbents of the office of register of deeds by such legislation. The office is not mentioned in the constitution. It is a creature of the statute, and there can, of course, be no doubt that the power that created the office may abolish it, or may change it, including the lengthening of the term of the office itself. There is no doubt of the validity of the act of 1889, the sole and manifest purpose of which was to extend the length of the term from two years to four years; and, likewise, there can be no doubt that the term might be again reduced by the legislature to two years, or that the office might be abolished entirely and its duties imposed upon other officers. *County of Douglas v. Timme,* 32 Neb. 272. Again, there can be no doubt that the legislature, after it has established an office, or in the act of establishing it, may provide for filling the office either by election by the people or, in a proper case, by appoint-

ment by some designated authority. The legislature, however, cannot itself fill the office. It cannot elect or appoint the officer. Const., art. V, sec. 10; *State v. Stanley*, 66 N. Car. 59, 8 Am. Rep. 488; *State v. Holcomb*, 46 Neb. 88. And it seems to us to follow that it cannot by direct legislation for that sole purpose cause an office to be held for the term, or any period of the term, by any particular individual. The supreme court of California in *Christy v. Board of Supervisors*, 39 Cal. 3, held, as stated in the syllabus:

"But when office has been filled by an election, the legislature may extend the term of the incumbent; provided the whole term, when extended, does not exceed the time limited by the constitution."

The court said in the opinion:

"If we had any doubt on this point, we should be very reluctant to arrive at a different conclusion, in view of the serious complications which might arise, growing out of past legislation on this subject. The legislature has so often exercised, unquestioned, the power to prolong the terms of the incumbents of elective officers, that it might result in the most embarrassing perplexities, if all these acts, at this late day, were pronounced to be void. They have repeatedly extended terms of supervisors, tax collectors, assessors and all county officers. (Citing many acts of their legislature.) Nothing but an imperious sense of duty, founded on the plainest principles of constitutional construction, would justify us in holding all these acts to be void after this lapse of time."

To our minds the reason for their holding set forth in this quotation is more satisfactory than the other reasons which the court attempted to give. It does not appear from the opinion that their constitution contains an equivalent of our provision in section 13, article XVI, to the effect that elective officers must be elected "at the general election next preceding the time of the termination of their respective terms of office." We find no suggestion in their opinion as to what force or meaning

should be given to such a constitutional provision. They say:

"The people select the incumbent of the *office*, but the legislature has the power to define the duration of the term."

That is, the people by election shall designate the person who shall hold the office, and the legislature shall then provide for how long a time he shall hold. Again they say:

"It cannot be denied that he was *elected* to the *office*, and that he would not be the incumbent of it, except for his election. The people have exercised their constitutional right in selecting him for the office," etc.

Such language as this does not satisfy our idea of the meaning and force of our constitutional provision. We think the idea of our constitution is that the people shall choose a man to fit the established term, and not that the legislature shall establish a term to fit the man who has been chosen. In the argument it was stated by counsel for the respondent that the inducement to this legislation was not to assist in carrying out the general idea of the more comprehensive biennial law, but the sole object of this legislation was to extend the term of the various registers of deeds for one year; that is, by an act for that sole purpose, the legislature has declared that A, who is now occupying the office of register of deeds and whose term for which the people elected him will expire in January next, shall hold that office for another year. This is nothing else than providing by legislative enactment who shall be register of deeds in the respective counties of the state from January, 1906, to January, 1907. This, we think, the legislature cannot do. On the other hand it is plainly provided by that part of the constitution above quoted that the legislature shall provide for an election so that, before the current term of elective officers expires, the people may select the incumbent for the succeeding term. The view of the California court makes no distinction between the term of office itself and the tenure

of that office during that term by the incumbent; between the official house and the individual who occupies it. The legislature establishes the office, and the people provide the incumbent. So that attempted legislation, which has for its sole purpose to determine who shall be the incumbent of the office for another definite period of time, is infringing upon the rights of the people, and is void.

Counsel for respondent cited *People v. Loeffler,* 175 Ill. 585, and *Crook v. People,* 106 Ill. 237, but these authorities do not support their contention. In the first named case it was said:

"When an office is created by a statute, it is wholly within the control of the legislature creating it. The length of term and mode of appointment may be altered at pleasure, and the office may be abolished and the compensation taken away from the incumbent, unless forbidden by the constitution."

These propositions are not controverted. They do involve the question of the right of the legislature to select the incumbent of an office. In 1872 the legislature of Illinois enacted a general incorporation law, and provided that cities already incorporated might, upon a vote of the people at an election held for that purpose, become incorporated under this general act. The city of Springfield was incorporated under a special act, and afterwards on the 4th day of April, 1882, held an election, at which it was voted to become incorporated under the general act. The general act of incorporation provided that "the city officers then in office shall thereupon exercise the powers conferred upon like officers in this act until their successors shall be elected and qualified." It was contended that the vote of the people repealed the special charter, and that that repeal abrogated all the offices of the city and determined the tenure of all the officers who held under the repealed act. The supreme court held in *Crook v. People,* 106 Ill. 237, that the vote of the people did abrogate the special charter of the city, but that the general incorporation act continued the officers that were

in office at the time of the vote for the purpose of calling
an election to elect officers under the general incorpora-
tion act, and that this was not such an extension of the
terms of those officers as to be in vi ation of the consti-
tution. It does not appear that the terms of the officers
were extended beyond the time for which they were elected
by the people, and moreover the authority given these
officers to hold over for a specific purpose was incidental
and necessary to the incorporation of the city under the
general law. We do not find it necessary to determine
in this case whether such special and incidental holding
over for a short period would be in violation of our con-
stitution. It was contended by both parties upon the
argument that the act that we are now considering was
enacted for the sole purpose of extending the tenure of
the office another year; one party contending that this
was the ultimate purpose of the legislation; the other
party contending that this purpose was only incidental
to the general scheme to provide for biennial elections.

The conclusion that we have reached in this case is
amply sustained in the reasoning of the court of appeals
of New York in *People v. Bull,* 46 N. Y. 57, 7 Am. Rep.
302. The legislature of New York created a new judicial
district in the city of New York, called the eighth judicial
district, and directed the time for the election of a justice
of the district court for that district. The time desig-
nated was "at the next general election which took place
in the same year." It was directed that the justice should
be elected the same as the justices of the district court
in that city, and that he should hold his office for the
term of six years from January 1, 1861. Under that law
the defendant was elected to the office. Afterwards the
legislature enacted that "the term of office of the justice
*  *  * of the district court for the eighth judicial dis-
trict, in the city of New York, is hereby extended and con-
tinued to and including the 31st day of December, 1869,
so that the term of office of said justice  *  *  * shall
expire when the term of office of the present justices  *  *  *

of the other district courts expire by law." The court
of appeals held that this act was unconstitutional; that
it was beyond the power of the legislature to extend the
term of the incumbent. The opinion, which was delivered
by Mr. Justice Folger, is an exhaustive and unanswerable
discussion of the point involved. In the course of the
discussion the eminent jurist said:

"If the legislature can, by extending the term of such
an office, continue in it the holder thereof for one year,
it may for any number of years; and thus the duration
of the term thereof may be perpetuated by legislative
power; and the people, after one exercise of the consti-
tutional power of choosing certain of their own officers,
be ever after that deprived of it. So the legislature may
as well from time to time, at the expiration of a term,
whether the elective term, or the legislative extended term
approaches, again and again extend it, and continue in
office an incumbent distasteful to his legitimate constit-
uency. Thus would the theory of the government be sub-
verted, and its practice be prevented. The government is
the expressed will of a majority of the people, limited
by constitutional restrictions. The practice is, that such
will shall be expressed, at frequently returning periods.
* * * It (the constitution) at the same time gives
the legislature power to declare the duration of the office.
But doing that, it means no more than that, be the time
what it may, and altered in duration when it may, the
incumbent shall be the creature of the people. And thus
it guards against a majority of the legislature, adverse
in sentiment to a majority of the people of a locality,
placing or continuing over them in official power, one
whom they would not select. * * * It will not be
claimed, that the legislature could have passed an act,
appointing to the office for a term of three years, after
the expiration of the defendant's elective term of six
years, any person whom it might in the act name. Nor
will it be claimed, that it could have passed an act, appoint-
ing the defendant to the office by his proper name for

that term of three years. That all will concede to be a violation of the constitution. But is not the violation the same, to continue him in the office by his official name for that time by legislative act? The authority under which he must act for the term is the same in both cases. He would find it not in the voice of the people, but only in the act of the legislature."

The whole opinion is worthy of careful study, and sets forth sufficient reasons for the conclusion which we have reached in this case. It is true the language of their constitution was that all such judicial officers as may be created therein (in cities and villages) by law shall be elected at such time and in such manner as the legislature may direct. This provision does not affect the argument as applied to the case at bar. The reasoning of the New York court, which we approve, is to the effect that continuing an officer in office beyond his term is equivalent to an appointment for the time he is so continued in office. The legislature cannot appoint registers of deeds, and therefore it cannot by an act for that sole purpose continue such officer in office for a definite period beyond the expiration of the term for which he was elected. It is not necessary to discuss the effect of section 13, article XVI of our constitution above referred to.

Again, it was said by the same court in 1896:

"Where the office is to be filled by one authority and the duration of the term is to be determined by another, the declaration of such duration must go before the filling, so that each authority may have its legitimate exercise." *People v. Foley*, 148 N. Y. 677, 43 N. E. 171. It was held in that case that: "The legislature cannot extend the term of a town officer after his election, since that would virtually be an appointment to the office during the period of extension." There were other matters presented upon the argument, but their discussion would be of no permanent value, and we think the foregoing are sufficient reasons for our conclusion in allowing the peremptory writ.

WRIT ALLOWED.

BARNES, J., dissenting.

I am unable to concur in the opinion of my associates. I think no one will dispute the correctness of the statement that "the legislature cannot appoint county officers, nor by an act solely for that purpose extend the terms of such officers." But whether that rule applies to the facts of this case is quite another question. It appears that in the year 1887 the legislature passed an act creating the office of register of deeds, and fixing the term thereof at two years; that at the legislative session of 1889 that act was amended, and the term of office was fixed at four years by the provision that the register of deeds shall be elected "at the general election in the year 1889, and every four years thereafter." The validity of these acts has never been questioned, and the majority opinion concedes that they were a proper exercise of legislative power, because the office in question is not a constitutional one, but is purely a creature of the legislature. And it is fairly stated by the majority that in such cases that body may fix the term of office, the compensation of the incumbent, the time of his election, and may change the duration of the term, or abolish the office altogether, if it be deemed expedient to do so. The legislature at its session of 1905 again amended the act, and changed the time of the election to fill the office, which would have occurred in the present year, to the general election of 1906, by an act which reads in part as follows: "At the general election in the year 1906, and every four years thereafter, a register of deeds shall be elected in and for each county having a population of * * * 18,003 inhabitants or more." Nothing appears in the title to the act, or in its provisions, which would render it invalid or unconstitutional, and on its face it seems to be a valid exercise of legislative power.

At the hearing it was contended by the relator that the act was a part of a legislative plan to provide for biennial instead of annual elections, and, the main act having

failed, the act under fire must also fail. It was found necessary, however, to abandon that proposition, for the rule, that constitutional and unobjectionable provisions in a legislative act may be declared invalid only applies where it is manifest that the unconstitutional features of the act constituted the main inducement for its passage, is so well established that its soundness cannot be questioned. The question of illegal or unconstitutional inducements does not seem to have been extended to separate or independent acts, constitutional in and of themselves.

Counsel for the relator also asserted that the sole purpose of the legislature in passing the act was to fill the office for the year commencing on the first Thursday after the first Tuesday of January, 1906, and ending at a corresponding time in the year 1907, by extending the term of the incumbents, and thus usurp the powers of the qualified voters of the state and deprive them of their constitutional right to elect such officers. As I understood the discussion, the above statement of counsel for the relator was strenuously denied by the attorney general and other able counsel who appeared with him on behalf of the people in support of the validity of the act. It is but fair, however, to say that the attorney who appeared as private counsel for the respondents, for the purpose of argument only, admitted the assertion, and contended that, even if that fact existed, it would not render the act invalid. In support of his contention he cited *Christy v. Board of Supervisors,* 39 Cal. 3, which is disapproved by the majority opinion. This, no doubt, is what led to the statement contained in that opinion that "it was contended by both parties upon the argument that the act we are now considering was enacted for the sole purpose of extending the tenure of the office another year," and to the conclusion announced by my associates. As I recollect it, the law department of the state made no such contention or admission; and I am of opinion that private counsel for the respondent had no right or power to bind either the people or the members of the legislature by a

statement of that kind, and thus invalidate a legislative act which, but for such admission, must have been held to be a valid exercise of legislative power.

The conclusion that a majority of the members of the legislature were influenced by 13 incumbents of the office of register of deeds to pass a law for the sole purpose of keeping them in office for a year is so absurd that I am unable to give it serious consideration The majority, however, base their opinion on that conclusion, and support it by the case of *People v. Bull*, 46 N. Y. 57, 7 Am. Rep. 302, where the dangers of legislative usurpation are discussed at length and with great ability. I am inclined to believe that the rule there announced has no application to the instant case, for several reasons: First. The office there in question was a constitutional one, and the decision could have been properly justified on the grounds stated in *State v. Galusha, ante,* p. 188. Second. The constitution of New York, under which that decision was rendered, differs from the constitution of Nebraska in an important and decisive particular. Our constitution says that the legislature shall provide for the election of such county and township officers as may be necessary, and contains no further restriction. The whole matter, except that the officers are to be elected and not appointed, is left to the discretion of the legislature. The term may be dealt with as the legislature pleases. The New York constitution required that the legislature should provide not only for the election, but also for the time and manner of election, of such officers. The Nebraska constitution goes no further than to require that the officers be elective, while the New York constitution required the legislature also to fix the term. The constitution of California is very like that of this state; hence it was held in *Christy v. Board of Supervisors, supra,* that an act of the legislature extending the term of a legislative office was constitutional. Third. The legislature of the state of New York is to some extent a continuing body. Senators are elected in that state for a term of four years, under an

arrangement by which one-fourth of their number goes out of office each year. So it would only be necessary, in order to secure permanency of objectionable legislation, to elect a few of the members of the assembly pledged to that purpose, and it would be accomplished. In our state, however, the members of the legislature are all elected biennially, and may be held to immediate and strict accountability to their constituents. So usurpation of unlawful power by our legislature can never occur.

Speaking for myself, I see no danger of legislative usurpation, for it does not appear to me that, by the passage of the act in controversy, any such usurpation was either contemplated, attempted, or accomplished. In determining the question involved in this case, we should be mindful of the rule that a legislative intent to violate the constitution is never to be assumed, if the language of the statute can be satisfied by a contrary construction. *New York & O. M. R. Co. v. Van Horn*, 57 N. Y. 473; *French v. Teschemaker*, 24 Cal. 518; *Attorney General v. City of Eau Claire*, 37 Wis. 400; *Brown v. Buzan*, 24 Ind. 194; Endlich, Interpretation of Statutes, sec. 178; *People v. McElroy*, 72 Mich. 446, 2 L. R. A. 609.

In *City of New Orleans v. Robira*, 42 La. Ann. 1,098, 11 L. R. A. 141, it was said: "The acts of the legislature are to be treated with great respect, as they emanate from a coordinate and powerful branch of the government. They must be presumed to be constitutional, unless they can be shown manifestly to have transgressed or violated the organic law."

Judge Cooley in his work on Constitutional Limitations (7th ed., ch. 7, par. IV), page 236, says: "The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil, but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions

upon points of right, reason, and expediency with the law-making power.  Any legislative act which does not en-croach upon the powers apportioned to the other depart-ments of the government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them."

So, in safeguarding the rights of the people against legislative usurpation, we should have a care lest we tres-pass upon the domain of a coordinate and independent department of state government.  Again, all acts and parts of acts bearing on a particular subject should be construed together, harmonized, if possible, and given such a construction, if it can be done, as to render all of them constitutional.  The foregoing rules have had our approval in one form or another in *Bradshaw v. City of Omaha*, 1 Neb. 16; *In re Creighton*, 12 Neb. 280; *Hallen-beck v. Hahn*, 2 Neb. 377; *State v. Smith*, 35 Neb. 13; *State v. Poynter*, 59 Neb. 417; *State v. Stewart*, 52 Neb. 243; *Muldoon v. Levi*, 25 Neb. 457; *State v. Farmers & Merchants Irrigation Co.*, 59 Neb. 1; *State v. Stuht*, 52 Neb. 209.

Notwithstanding these rules, it is announced by the ma-jority that the act in question violates the provisions of section 13, article XVI of the constitution, because by its terms the legislature has appointed persons to fill the office of register of deeds for the ensuing year, and de-prived the people of their right to elect such officers.  In this conclusion I cannot concur.  An examination of the register of deeds acts discloses that the legislature has never, in direct language, fixed the term of that office. That matter, however, is incidentally included in the words, "in the year 1889, and every four years thereafter."

No section of the constitution prohibits the legislature from extending the term of office, where the office is created by legislative act.  Now, if the section above men-tioned is construed in such a way as to prevent the ex-tension of the term of a legislative office, on the ground

that the extension of such term is filling the office by legislative appointment, then sections 101, 103, 104 and 107 of chapter 26, Compiled Statutes, 1903, are unconstitutional, because they define how vacancies in office may be created, provide for filling such vacancies, and declare that "every officer elected or appointed for a fixed term shall hold office until his successor is elected, or appointed and qualified, unless the statute under which he is elected or appointed expressly declares the contrary." If we may be permitted to look beyond the terms of the act in question and ascertain the purpose of the legislature in passing it, then the several acts passed by that body at its last session relating to the subject of elections conclusively show that the purpose was to provide for biennial elections, which was surely a commendable one, and the act in question is at least one step toward its consummation. I think it stands to reason that the legislature, fearing the main act might not be sufficient to change the election of registers of deeds from the odd to the even numbered years, adopted the act which is the subject of this controversy. Now it must be conceded that this act, in connection with section 104 of the chapter above mentioned, operates incidentally to extend the term of the incumbents until their successors · shall be elected at the general election of 1906, and thereafter qualified, as provided by law. That this does not render the act invalid seems to be settled by the great weight of authority in this country. The time of holding over of these officers is as much a part of their term of office as that which preceded it. *State v. Moores,* 61 Neb. 9; *Pruitt v. Squires,* 64 Kan. 855, 68 Pac. 643; *State v. Menaugh,* 151 Ind. 260, 43 L. R. A. 408; *State v. Tallman,* 24 Wash. 426, 64 Pac. 759; *Commonwealth v. Hanley,* 9 Pa. St. 513; *Gosman v. State,* 106 Ind. 203, 6 N. E. 349; *State v. Howe,* 25 Ohio St. 588; *State v. Lusk,* 18 Mo. 333; *People v. Lord,* 9 Mich. 226. It was said in *State v. Tallman, supra:*

"When, therefore, the legislature used the words, 'whose

term of office shall begin on the second Monday in January next succeeding his election and continue for two years and until his successor is elected and qualified,' it was not meant thereby that his term of office should be two years and no more. The phrase, 'and until his successor is elected and qualified,' means something. It was not used idly. If so, the term was not fixed at two years and no more, but was two years and more; the further time depending upon the contingency not only of an election, but also of the qualification of the person elected, which might be one day, one month, or any number of months."

The effect of the sections of chapter 26, above-mentioned, is to provide that, if the election of any officer fail, by reason of the ineligibility of the person elected, by failure to hold an election, the postponement of such election by legislative act, or a failure to elect for any other reason, there shall be no vacancy in the office, and the incumbent shall hold over until the next general election at which his successor can be chosen. Those sections were enacted to provide for contingencies like the one which arises in this case; and it seems to me that it cannot be said that the legislature, by passing an act which incidentally creates such a contingency, has appointed any particular person or persons to fill the office. The office is already filled by the voters. They have filled it by electing the person of their choice, and by operation of law such person continues to hold the office until he can be legally reelected, or another chosen to take his place. This view not only accords with the authorities last above cited, but with many other decisions of the courts of last resort of nearly all of our sister states.

It seems to me that the effect of the majority opinion is to restrict the power of the legislature to deal with offices of its own creation; to overthrow or, to say the least, disregard the provisions of section 104, chapter 26, Compiled Statutes, 1903, to violate the usual canons of constitutional and statutory construction, and substitute the opin-

ion of the court for that of the legislature as to matters of legislative policy. I therefore respectfully dissent from the conclusion of my associates. I am of opinion that the act in question is constitutional, and that the writ should have been denied.