Stephenson, J.
 

 The order of the parties is . reversed in this court. The Board of Elections, being plaintiff in error, will be referred to as plaintiff, and William Schneider, defendant in error, as defendant.
 

 The Court of Appeals held that House Bill No. 331 (now Sections 2750 and 2750-1, General Code) is unconstitutional in all its parts, and that the adoption of the new Article X of the Constitution of Ohio, commonly known as the County Home Rule Amendment, at the November election, 1933, in no wise affects the rights of William Schneider, the relator in that court.
 

 House Bill No. 331 is referred to in common parlance as a “term extender.” By its provisions it extended the existing terms of office of county recorders to the first Monday of January, 1937, and further provided that the first election of county recorder should be held in November, 1936, and that quadrennially thereafter the county recorder would assume the duties of his office on the first Monday of January next after his election, and hold said office for a period of four years. The provision for filling vacancies is of no concern here.
 

 Ordinarily, that which the Constitution, under the accepted rules of construction, does not prohibit, cannot contrav_ene the Constitution. If such prohibition is not expressed, and it cannot be clearly implied from the language used in the Constitution, there is no prohibition.
 

 In approaching the question of the constitutionality of this act we are not unmindful of the following well established rules of construction, viz:
 

 1. It must be accorded the presumption of constitutionality.
 

 
 *283
 
 2. The question of constitutionality must be determined in the light of the Constitution in its entirety.
 

 3. If the Act can be fairly reconciled with the Constitution, we must so reconcile it.
 

 4. In considering the scope of the Act we must not only consider past and present evils, if any, but we must determine whether its existence would naturally tend to lead us into future evils.
 
 Village of Euclid
 
 v.
 
 Camp Wise Assn.,
 
 102 Ohio St., 207, at page 215, 131 N. E., 349.
 

 5. If the maxim
 
 “Expressio unius est exclusio alterius”
 
 is involved, we must consider it.
 
 State, ex rel. Robertson Realty Co.,
 
 v.
 
 Guilbert, Aud. of State,
 
 75 Ohio St., 1, 78 N. E., 931.
 

 6. Courts have nothing to do with the policy, justice or wisdom of a statute, so long as it can be said that it does not contravene the Constitution.
 
 Cincinnati Street Ry. Co.
 
 v.
 
 Horstman,
 
 72 Ohio St., 93, 73 N. E., 1075;
 
 R. & O. Rd. Co.
 
 v.
 
 Chambers,
 
 73 Ohio St., 16, 76 N. E., 91, 11 L. R. A. (N. S.), 1012;
 
 Nicholson
 
 v.
 
 Franklin Brewing Co.,
 
 82 Ohio St., 94, 91 N. E., 991, 137 Am. St. Rep., 764.
 

 7. It is dangerous for any court to hold that an act of the General Assembly contravenes the spirit, but not the letter, of the Constitution. The spirit of the Constitution is like any other spirit. We cannot see it, nor handle it, consequently we do not know much about it. We are too prone to insist that the spirit of the Constitution is what we think it ought to be. Unless such spirit is clearly manifest, it had best be left in the spiritual world.
 
 Cass
 
 v.
 
 Dillon, 2
 
 Ohio St., 607;
 
 State, ex rel. Evans,
 
 v.
 
 Dudley,
 
 1 Ohio St., 437;
 
 Lehman
 
 v.
 
 McBride,
 
 15 Ohio St., 573;
 
 State, ex rel. Garnes,
 
 v.
 
 McCann,
 
 21 Ohio St., 198.
 

 8. However, the General Assembly exercises delegated authority only, and any act passed by it not fairly falling within the scope of legislative authority
 
 *284
 
 is as clearly void as though expressly prohibited.
 
 Cincinnati, Wilmington & Zanesville Rd. Co.
 
 v.
 
 Commissioners of Clinton County,
 
 1 Ohio St., 77;
 
 Baker
 
 v.
 
 City of Cincinnati,
 
 11 Ohio St., 534;
 
 Lehman
 
 v.
 
 McBride, supra; State, ex rel. Garnes,
 
 v.
 
 McCann, supra; Bloom
 
 v.
 
 City of Xenia,
 
 32 Ohio St., 461.
 

 9. A constitution is to be construed by the same rules as those employed in the construction of statutes, except that since the terms of the constitution are more general the grants of power should be construed more liberally.
 
 County of Miami
 
 v.
 
 City of Dayton,
 
 92 Ohio St., 215, 110 N. E., 726.
 

 10. History of the law may lend light to construction. Cooley’s Constitutional Limitation (8 Ed.), Yol. 1, pages 132 and 133.
 

 History of the law necessarily carries with it history of the subject matter.
 

 Our Declaration of Independence is simply a declaration of principles and an enumeration of charges against King George the Third. Amongst other things, this instrument in substance declares that life, liberty and the pursuit of happiness are inalienable rights, and to secure them governments are instituted amongst men, deriving their just powers from the consent of the governed. Stated in another form, the governors derive their just powers from the consent of the governed. Then the makers of the Federal Constitution re-affirmed this principle in the preamble to that instrument, wherein they ordain and establish the Constitution in order to secure the blessings of liberty to themselves and their posterity. The rights of the people generally, and particularly their right to vote, were safeguarded zealously by the Federal Constitution, and, as evidence of good faith and in consideration of the rights that the states and the people had given up, the Federal Government guaranteed to every state a republican form of government and expected them
 
 *285
 
 to preserve it. A republican form of government can only be preserved by securing to its electors tbe right to select tbeir governors by ballot, for terms fixed in advance by tbe legislature of tbe state.
 

 By tbe Federal Constitution all legislative powers were vested in Congress. All legislative power in the state of Obio is vested in tbe General Assembly of tbe state. Section 1, Article II, Constitution of Ohio.
 

 It will be noted that this is a general grant of legislative power. Tbe people may delegate tbeir rights by wholesale to tbe General Assembly through tbe medium of tbe Constitution, if they see fit. If tbe people find that they have delegated rights to tbe General Assemby that they should have retained, they must get them back by constitutional amendment. Tbe courts cannot give them back.
 

 At tbe time of tbe enactment of House Bill No. 331 what was tbe constitutional status with reference to county officers?
 

 Section 2, Article XVII of tbe Constitution, in so far as applicable here, provides:
 

 “Tbe term of office of Justices of tbe Peace shall be such even number of years not exceeding four (4) years, as may be prescribed by tbe General Assembly. Tbe term of office of tbe members of tbe Board of Public Works shall be such even number of years not exceeding six (6) years as may be so prescribed; and tbe term of office of
 
 all elective
 
 county, township, municipal and school officers shall be such even number of years not exceeding four (4) years as may be so prescribed.
 

 “And tbe General Assembly shall have power to so extend existing terms of office as to effect the purpose of Section 1 of this Article.”
 

 Section 1 of Article XVII provides as follows:
 

 “Elections for state and county officers shall be held on tbe first Tuesday after tbe first Monday in Novem
 
 *286
 
 ber in the even numbered years; and all elections for all other elective officers shall be held on the first Tuesday after the first Monday in November in the odd numbered years. ’ ’
 

 These sections are set out in reverse order, as such arrangement most aptly portrays their connection and relationship.
 

 By this section of the Constitution, fixing the term of county elective officers was recognized as a legislative function, and the power to fix such terms at not more than four years was specifically delegated. This section of the Constitution was adopted November 7, 1905, and the first election for state and county officers thereunder was held in November, 1906, and such elections have been held biennially ever since. It follows that the last election for state and county officers was held in 1932 and the next one will be held in 1934.
 

 The new Article X of the Constitution of Ohio, adopted November 7, 1933, as we see it, does not affect the question now before us. Section 1 of that Article makes the following provision:
 

 “The General Assembly shall provide by general law for the organization and government of counties, and may provide by general law alternative forms of county government.”
 

 Does this amendment add to or take from the powers that had previously been delegated to the General Assembly relative to the terms of office of county officers?
 

 We agree that to uphold the constitutionality of this act would create no interregnum in the office of county recorder, as that is provided for by Section 8, General Code:
 

 “A person holding an office of public trust shall continue therein until his successor is elected or appointed and qualified, unless otherwise provided in the constitution or laws. ’ ’
 

 There is no question that the General Assembly, un
 
 *287
 
 der our Constitution, has plenary power to postpone elections in accordance with.its provisions, and readjust the commencement of official terms. The General Assembly, under the Constitution, can extend the terms of county officers, so long as it does not deprive the office of its elective character.
 

 The question herein involved has not been touched by this court unless it can be gathered from the dictum in the case of
 
 State, ex rel. Pardee,
 
 v.
 
 Pattison, Governor,
 
 73 Ohio St., 305, at page 327, as follows:
 

 “It therefore appears that in legal contemplation the choosing an officer at an election, duly proclaimed, is a choosing for the constitutional or statutory term of office, as the case may be. ’ ’
 

 This is pure dictum and we can consider it only for the purpose of determining the process of reasoning whereby the court arrived at the law as announced in the syllabus.
 

 We are forced to conclude that the question here presented has not heretofore been passed on by this court, and we must go to the decisions of the courts of last resort of those states having statutes and constitutions similar to ours for the determination of this question.
 

 Does House Bill No. 331 (now Sections 2750 and 2750-1, General Code) take away from the office of county recorder its elective character?
 

 The case of
 
 State, ex rel. Eavey,
 
 v.
 
 Smith, Secy. of State,
 
 107 Ohio St., 1, 140 N. E., 737, deals solely with the power of the General Assembly to provide by election for the filling of an interim when the office of county commissioner was extended from two to four years. This court held that the General Assembly had such power. --
 

 ríe Constitution of the state of Kansas, in so far as it delegates power to its Legislature to provide for elections, terms and extensions of terms of county offi
 
 *288
 
 cers, is similar to ours. The case of
 
 Wilson
 
 v.
 
 Clark,
 
 63 Kan., 505, 65 P., 705, sounded the keynote in cases, of this character.
 

 Postponement of elections by the legislature does not fly in the face of the Constitution so long hs such postponement is reasonable and does not destroy the elective character of the office.
 

 The case of
 
 Spencer
 
 v.
 
 Knight, 177
 
 Ind., 564, 98 N. E., 342, holds that when the legislature has the power to fix the commencement of a term, it may in the interest of public policy postpone an election for a reasonable time. This is under a constitution different from ours. We find no fault with this case.
 

 The case of
 
 Christy
 
 v.
 
 Board of Supervisors,
 
 39 Cal., 3, is the most liberal case cited. The court therein held:
 

 “But where an office has been filled in the method prescribed by the Constitution, no reason is perceived why the Legislature may not extend the term of the incumbent; provided the whole term when extended does not exceed the time limited by the Constitution. ’ ’
 

 If we could accept this as the law, it would be dis-positive of this case; but the reasoning in the case does not impress us. Reading at page 12 of the opinion, we find the following:
 

 “An officer duly elected by the people, and holding his office for a. term extended by the legislature within the constitutional limitation of time, cannot, in any just sense, be held to hold, not as an elected officer, but as an appointee of the legislature. It cannot be denied that he was
 
 elected to the office,
 
 and that he would
 
 not
 
 be the incumbent of it, except for his election. The people have exercised their constitutional right in selecting him for the office, aiffi instead of thwarting the popular will by appointing some one else,
 
 iho
 
 h-d». lature has rather ratified it by extending his term. The duration of the terms of office, except as limited by the
 
 *289
 
 Constitution, is a matter of purely legislative discretion. It may be diminished or extended at the will of the legislature, within those limits; and this power in no degree trenches on the constitutional right of the people to select the person who is to fill an elective office. The people select the incumbent of the
 
 office,
 
 but the legislature has the power to define the duration of the term, provided it is not fixed by the Constitution, and is within the constitutional limitation of four years.”
 

 This decision was rendered under a constitution similar to ours. .We cannot agree with this case. We refrain from criticism, but cite the case of
 
 State, ex rel. Hensley,
 
 v.
 
 Plasters,
 
 74 Neb., 652, 105 N. W., 1092, 3 L. R. A. (N. S.), 887, the syllabus of which reads as follows:
 

 “1. The legislature cannot appoint county officers, nor by an act solely for that purpose extend the terms of such officers.
 

 ‘ ‘ 2. Chapter 47, p. 292 of the Laws of 1905 is unconstitutional and void. ’ ’
 

 The court in this case discusses the case of
 
 Christy
 
 v.
 
 Board of Supervisors, supra,
 
 in the following language :
 

 “We find no suggestion in their opinion as to what force or meaning should be given to such a constitutional provision. They say:
 

 “ ‘The people select the incumbent of the
 
 office,
 
 but the legislature has the power to define the duration of the term,’
 

 “That is, the people by election shall designate the person who shall hold the office, and the legislature shall then provide for'how long a time he shall hold.” Again they say:
 

 “ ‘It cannot be denied that he was
 
 elected
 
 to the
 
 office,
 
 and that he would not be the incumbent of it, except for his election. The people have exercised
 
 *290
 
 their constitutional right in selecting him for the office, ’ etc.
 

 “Such language as this does not satisfy our idea of the meaning and force of our constitutional provision. We think the idea of our Constitution is that the people shall choose a man to fit the established term, and not that the legislature shall establish a term to fit the man who has been chosen. In the argument it was stated by counsel for the respondent that the inducement to this legislation was not to assist in carrying out the general idea of the more comprehensive biennial law, but the sole object of this legislation was to extend the terms of the various registers of deeds for one year; that is, by an act for that sole purpose the legislature has declared that A., who is now occupying the office of register of deeds and whose term for which the people elected him will expire in January next, shall hold that office for another year. This is nothing else than providing by legislative enactment who shall be register of deeds in the respective counties of the state from January, 1906, to January, 1.907. This we think the legislature cannot do. On the other hand, it is plainly provided by that part of the Constitution above quoted that the legislature shall provide for an election so that, before the current term of elective officers expires, the people may select the incumbent for the succeeding term. The view of the California court makes no distinction between the term of office itself and the tenure of that office during that term by the incumbent, between the official house and the individual who occupies it. The legislature establishes the office, and the people provide the incumbent. So that attempted legislation, which has for its sole purpose to determine who shall be the incumbent of the office for another definite period of time, is infringing upon the rights of the people, and is void.”
 

 
 *291
 
 "While, as has been said heretofore, the question herein involved has not been passed on by this court, there are numerous decisions that portray the trend of the court to the effect that the power given by the Constitution to the Legislature to extend official terms should not be liberalized to the point that such extension would destroy the elective character of the office. A careful reading of the following cases establishes such trend:
 

 State, ex rel. Kelly,
 
 v.
 
 Thrall,
 
 59 Ohio St., 368, 52 N. E., 785;
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 Beal,
 
 60 Ohio St., 208, 54 N. E., 84;
 
 State, ex rel. Atty. Genl.,
 
 v.
 
 Hall,
 
 67 Ohio St., 303, 65 N. E., 1019;
 
 State, ex rel. Pardee,
 
 v.
 
 Pattison, Gov., supra; State, ex rel. Atty. Genl.,
 
 v.
 
 Mulhern, Sheriff,
 
 74 Ohio St., 363, 78 N. E., 507;
 
 State, ex rel. Hoyt,
 
 v.
 
 Metcalfe,
 
 80 Ohio St., 244, 88 N. E., 738; and
 
 State, ex rel. Young,
 
 v.
 
 Cox, Gov.,
 
 90 Ohio St., 219, 107 N. E., 517.
 

 It is not necessary to cite cases to the effect that the inviolability of the right to vote must be preserved. The physical act of casting a ballot means nothing, but the expression of that ballot means everything, and its expression must not be defeated, directly or indirectly.
 

 The county recorders now in office were elected at the November election, 1932, for a term of two years, beginning on the first Monday of January, 1933. Such term in course would end on the first Monday of January, 1935. Such term by force of Section 2750-1, General Code, is extended to the first Monday of January, 1937.
 

 In brief, present incumbents in the office of county recorder are given an extra term by the General Assembly. Such officers are thereby given a full term of office without an elector in the state having voted for them or having been given an opportunity to vote for them. Is this not a dangerous departure under a republican form of government? If such action on the
 
 *292
 
 part of the General Assembly were given the stamp of constitutional approval, then subsequent General Assemblies could provide for further extensions
 
 ad infinitum,
 
 and the right of the governed to select their governors would be nullified.
 

 In this holding we are not denying any right to the General Assembly to extend the term of county recorder to four years, the maximum fixed by the Constitution. But all this can be done without extending the terms of incumbents for full two years. Nor are we condemning reasonable extensions of terms of office to meet constitutional requirements. We do hold that under its constitutional grant of power the General Assembly cannot present to an incumbent an extra term of office. To hold otherwise would amount to virulent encouragement of oligarchy.
 

 Giving its most liberal construction to that part of Section 2 of Article XVII of our, Constitution which provides that “the General Assembly shall have power to so extend terms of office,” it is limited by the remaining words of the sentence, “as to effect the purpose of Section 1 of this Article,” which purpose is distinctly expressed to the effect that elections for state and county officers shall be held on the first Tuesday after the first Monday in the even numbered years.
 

 The doctrine
 
 “Expressio unius est exelusio alterius”
 
 confines the General Assembly to the express terms of the grant in Article XVII, which terms are so clear and unambiguous as to require no construction.
 

 We hold that Section 2750-1, General Code, is unconstitutional. Having held that Section 2750-1, General Code, violates the Constitution, can- Section 2750, General Code (a part of the same act), be upheld as a constitutional provision?
 

 We agree with counsel that the last word on this question was pronounced in the case of
 
 Geiger
 
 v.
 
 Gei
 
 
 *293
 

 ger, 117
 
 Ohio St., 451, 160 N. E., 28. This court held, in effect, in that case, that unless different enactments are
 
 inseparably connected
 
 one with the other, or others, the unconstitutionality of the one section does not necessarily invalidate the other sections. In adopting the test of inseparability in the above case, this court followed the case of
 
 State
 
 v.
 
 Bickford,
 
 28 N. D., 36, 147 N. W., 407, Ann. Cas., 1916D, 140, wherein the court said:
 

 “1/Are the constitutional and unconstitutional parts capable of separation so that each may be read and may stand by itself?
 

 “2.
 
 Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out?
 

 “3. Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part and to give effect to the former only ? ’ ’
 

 By giving effect to the attempted extension of term, the county recorder would be taken out of the list of county officers to be voted for in 1934. As a matter of fact, the term for which county recorders were to be voted for in 1934 was given them by force of Section 2750-1, General Code, and under such an arrangement it was necessary to fix the November, 1936, election as the first election at which the voters would have the privilege of voting for county recorders for the four-year term, and it was a part of the legislative plan to perpetuate the incumbents in office for another term. Under the provisions of Section 2750-1, General Code, fixing the first Monday of January, 1937, as the beginning of the first four year elective term, it was necessary to provide that county recorders for such term should be elected at the general election in 1936,
 
 *294
 
 and provision was made for it by the enactment of Section 2750, General Code.
 

 If it were not for the fact that the two sections when considered together do away with the election of 1934, tenable argument could be advanced favoring the constitutionality of Section 2750, General Code; but the sections are so “inseparably connected” that both must fall, and the repealing section must fall with them. To hold otherwise would be to create a hiatus or interregnum, as you please, in the office of county recorder for the term of two years, and leave undisturbed the evil this action seeks to correct.
 

 County recorders will be elected at the general election in 1934, as provided in Section 2750, General Code, prior to its attempted repeal and amendment.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Jones, Matthias, Bevis, Zimmerman and Wilkin, JJ., concur.