THE STATE OF OHIO, APPELLEE, *v.* HODGE, APPELLANT.

[Cite as *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320.]

*Constitutional law — Ohio's former consecutive-sentencing provisions, R.C. 2929.14(E)(4) and 2929.41(A), have not been revived by Oregon v. Ice — Criminal law — Sentencing — Trial court judges are not precluded from engaging in judicial fact-finding prior to imposing consecutive sentences — Trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences.*

(No. 2009-1997 — Submitted September 15, 2010 — Decided December 29, 2010.)

APPEAL from the Court of Appeals for Hamilton County, No. C-080968.

_____

SYLLABUS OF THE COURT

1. The jury-trial guarantee of the Sixth Amendment to the United States Constitution does not preclude states from requiring trial court judges to engage in judicial fact-finding prior to imposing consecutive sentences. (*Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, construed.)

2. The United States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

3. Trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made.

_____

**CUPP, J.**

{¶ 1}   In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, this court held some sections and provisions of Ohio's sentencing statutes unconstitutional based on the decisions of the United States Supreme Court in *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.

{¶ 2}   Among the provisions held unconstitutional in *Foster* were those requiring a trial judge to make certain findings prior to imposing consecutive sentences, R.C. 2929.14(E)(4), and creating presumptively concurrent terms, R.C. 2929.41(A).  To remedy this constitutional defect, these provisions were severed from the remaining, valid portions of the statutory sentencing framework.  After the decision in *Foster*, trial judges who imposed consecutive sentences did not need to apply the provisions severed by *Foster* but instead were to apply the law that was displaced by the enactment of the severed provisions.  The trial court in this case, as allowed by our decision in *Foster*, imposed consecutive sentences without making factual findings under R.C. 2929.14(E)(4) or presuming that sentences were to run concurrently under R.C. 2929.41(A).

{¶ 3}   Subsequent to *Foster*, the United States Supreme Court, in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, upheld the constitutional validity of an Oregon statute similar to Ohio's pre-*Foster* sentencing statutes that requires Oregon's trial judges to make factual findings prior to imposing consecutive sentences.

{¶ 4}   The defendant in the case now before us asks us to hold that *Oregon v. Ice* reinstated or revived the Ohio statutory provisions pertaining to consecutive sentences that were held unconstitutional in *Foster*.  He also argues

that certain defendants who were sentenced to consecutive terms after *Foster* must be resentenced pursuant to the provisions that were invalidated in *Foster*.

{¶ 5} For the reasons that follow, we determine in the circumstances present here that *Ice* does not revive the disputed statutory provisions and that defendants who were sentenced by trial judges who did not apply those provisions are not entitled to resentencing. We accordingly affirm the judgment of the court of appeals.

{¶ 6} Although we affirm the judgment below, we acknowledge that given the holding and reasoning of the United States Supreme Court in *Ice*, the General Assembly is no longer constrained by *Foster*'s holdings regarding the constitutionality of the consecutive-sentencing provisions invalidated in *Foster* and may, if it chooses to do so, respond with enactment of a statutory provision in light of *Ice*'s holding.

## I. Facts and Procedural History

{¶ 7} Defendant-appellant, Kenneth Hodge, pleaded guilty in Hamilton County Common Pleas Court to nine felonies with firearm specifications. In an entry on September 18, 2008, the trial court merged several counts and imposed an aggregate prison sentence of 18 years—three years for each of five counts of aggravated robbery and three additional years for accompanying firearm specifications. The three-year sentences for the multiple firearm specifications were imposed concurrently with each other and consecutively to the aggravated-robbery sentences.[1] In imposing consecutive sentences on the aggravated-robbery counts, the trial court did not make the findings required by R.C. 2929.14(E)(4) and 2929.41(A) in reliance on this court's holding in *Foster* that those statutes were unconstitutional.

---

1. Pursuant to R.C. 2929.14(E)(1), the trial court was required to run the sentence for the firearm specifications consecutively to the sentences for the other offenses. Thus, the consecutive sentence on the firearm specifications is not at issue in this case.

**{¶ 8}** On appeal, Hodge argued in his sole assignment of error that the trial court erred by imposing consecutive sentences without making findings under R.C. 2929.14(E)(4) and 2929.41(A), asserting that *Foster*'s holding that those statutes were unconstitutional is no longer valid in light of *Oregon v. Ice*. He asserted that the statutes are, therefore, revived because they have never been specifically repealed by the General Assembly. In rejecting this argument, the First District Court of Appeals cited several decisions of other appellate districts that refused to accept the same argument[2] and briefly stated that it agreed with the reasoning of those decisions: "We remain bound by the Ohio Supreme Court's decision in *Foster*. The Ohio Supreme Court has not directly addressed the effect of *Oregon v. Ice* on Ohio's sentencing law. Absent a contrary decision by the Ohio Supreme Court, *Foster* still applies to consecutive sentences. The trial court did not err when it imposed consecutive sentences without making findings of fact." *State v. Hodge* (Sept. 16, 2009), 1st Dist. No. C-080968.

**{¶ 9}** We accepted Hodge's appeal under our discretionary jurisdiction for the purpose of reviewing the question whether, as a consequence of the decision in *Ice*, Ohio trial courts imposing consecutive sentences must first make the findings specified in R.C. 2929.14(E)(4) in order to overcome the presumption for concurrent sentences of R.C. 2929.41(A). 124 Ohio St.3d 1472, 2010-Ohio-354, 921 N.E.2d 245.

## II. Analysis

**{¶ 10}** In *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, this court applied the principles developed in *Blakely,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, to determine that a number of provisions in Ohio's sentencing statutes violated the

---

2. See *State v. Miller*, 6th Dist. No. L-08-1314, 2009-Ohio-3908; *State v. Robinson*, 8th Dist. No. 92050, 2009-Ohio-3379; *State v. Mickens*, 10th Dist. Nos. 08AP-743, 08AP-744, and 08AP-745, 2009-Ohio-2554; *State v. Krug*, 11th Dist. No. 2008-L-085, 2009-Ohio-3815.

jury-trial guarantee of the Sixth Amendment to the United States Constitution. Particularly relevant to this case, we held in *Foster* at paragraph three of the syllabus: "Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences, they are unconstitutional."

{¶ 11} Upon holding the consecutive-sentencing provisions unconstitutional, we applied *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, to hold that the statutes were severable from the Ohio sentencing framework, so that "[a]fter the severance, judicial fact-finding is not required before imposition of consecutive prison terms." *Foster* at paragraph four of the syllabus. We further held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. We determined that three of the four cases on appeal addressed within the *Foster* opinion and other cases that were identified in *Foster* as pending on direct review had to be "remanded to trial courts for new sentencing hearings" because Sixth Amendment principles "as they have been articulated" had to be protected. Id. at ¶ 104.

{¶ 12} In *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 18, we recognized that *Foster* severed and excised former R.C. 2924.14(E) and former R.C. 2929.41(A) in their entirety, and we observed that this action left no specific statute in place to govern the imposition of consecutive sentences beyond the basic statutes regarding the "purposes and principles of sentencing." We held that common-law sentencing presumptions were therefore reinstated, giving trial judges "the discretion and inherent authority to determine whether a prison sentence within the statutory range shall run consecutively or concurrently." Id. at ¶ 18-19.

**{¶ 13}** We reaffirmed *Foster* and *Bates* in *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, holding that a trial court has the discretion to impose consecutive sentences in the wake of those decisions and that despite the severance of the statutory presumptions, a trial court is not required by the rule of lenity to impose minimum or concurrent sentences. Id. at paragraph two of the syllabus and at ¶ 36-41.

**{¶ 14}** In reliance on these decisions, many defendants in Ohio have been sentenced by trial judges who have exercised their discretion to impose consecutive sentences without applying any of the statutes severed in *Foster,* including those regarding consecutive sentencing.

**{¶ 15}** The validity of the reasoning in *Foster*, however, was called into question by the United States Supreme Court's decision in *Ice*. In that case, decided nearly three years after *Foster*, a five-to-four majority of the court held that Oregon's consecutive-sentencing statutes, which were similar to the consecutive-sentencing provisions struck down in *Foster*, do not violate the Sixth Amendment concerns set forth in *Apprendi* and *Blakely*. *Ice*, 555 U.S. at ___, 129 S.Ct. at 714-715, 172 L.Ed.2d 517.

**{¶ 16}** We briefly discussed *Ice* in *Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, at ¶ 34, stating that *Ice* "held that a jury determination of facts to impose consecutive rather than concurrent sentences was not necessary if the defendant was convicted of multiple offenses, each involving discrete sentencing prescriptions. The jury historically played no role in a decision to impose sentences consecutively or concurrently. The choice rested exclusively with the judge, and thus the Oregon statutes did not erode any traditional function of the jury. Further, the state had sovereign authority over the administration of its criminal justice system, and there was no compelling reason to diminish the state's role by curbing the state's limitation on the discretion of judges in imposing consecutive or concurrent sentences."

**{¶ 17}** We declined in *Elmore*, however, to definitively resolve *Ice*'s effect on Ohio's sentencing laws, stating that "*Foster* did not prevent the trial court from imposing consecutive sentences; it merely took away a judge's duty to make findings before doing so. The trial court thus had authority to impose consecutive sentences on Elmore. We will not address fully all ramifications of *Oregon v. Ice*, since neither party sought the opportunity to brief this issue before oral argument." (Footnote omitted.) Id. at ¶ 35.

**{¶ 18}** *Foster* was not accepted for direct review by the United States Supreme Court, and thus *Ice* did not specifically overrule *Foster*. Our decision in *Foster* is final as to the issues raised by the parties in that appeal.[3]

**{¶ 19}** We recognize, however, that the decision in *Ice* undermines some of the reasoning in the *Foster* decision that judicial fact-finding in the imposition of consecutive sentences violates the Sixth Amendment. Although there are differences between the Ohio provisions struck down in *Foster* and the Oregon statutes upheld in *Ice*, these distinctions are immaterial in light of the broad reasoning employed in *Ice*. After *Ice*, it is now settled law that *Apprendi* and *Blakely* do not control the resolution of this issue and that the jury-trial guarantee of the Sixth Amendment to the United States Constitution does not preclude states from requiring trial court judges to engage in judicial fact-finding prior to imposing consecutive sentences. See *Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, at ¶ 34 (the Oregon statutes at issue in *Ice* "did not erode any traditional function of the jury").

**{¶ 20}** Had we the benefit of the United States Supreme Court's decision in *Ice* regarding Oregon's consecutive-sentencing statutes prior to our decision in *Foster*, we likely would have ruled differently as to the constitutionality, and

---

3. The United States Supreme Court had an opportunity to review our decision in *Foster* when it was appealed to that court, but denied certiorari. *Foster v. Ohio* (2006), 549 U.S. 979, 127 S.Ct. 442, 166 L.Ed.2d 314.

continued vitality, of our own state's consecutive-sentencing provisions. But we did not have that guidance, and our holding was reasonable in light of the status of federal constitutional law at the time.[4]

**{¶ 21}** Although we acknowledge that *Ice* has an impact on *Foster*, we do not accept Hodge's argument that the decision in *Ice* automatically and retroactively reinstates the consecutive-sentencing statutes invalidated in *Foster*. Hodge's argument is based on the fact that the severed statutory provisions invalidated in *Foster* have never been repealed by the General Assembly.

**{¶ 22}** The gist of Hodge's position is that we should overrule the holding in *Foster* that R.C. 2929.14(E)(4) and 2929.41(A) are unconstitutional and hold that the consecutive-sentencing statutes struck down in *Foster* have been reinstated or revived by the decision in *Ice*, with the ultimate result that Hodge is entitled to be resentenced pursuant to the former consecutive-sentencing statutes. However, as explained below, we decline Hodge's request that we hold that the statutes have been revived and accordingly also deny the relief he seeks.

**{¶ 23}** Some of our precedents contain statements of law that seem to support the position that when this court holds a statute unconstitutional, the statute can no longer have any effect and can be revived only through affirmative action of the General Assembly. See, e.g., *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 80, 25 OBR 125, 495 N.E.2d 380 (legislation that was unconstitutional at the time of its passage is "void from its inception," and "an unconstitutional law must be treated as having no effect whatsoever from the date of its enactment");[5] *Franklin Cty. Bd. of Elections v. State ex rel. Schneider*

---

4. A vigorous dissent in *Ice* criticized the majority for abandoning the "clear" principles of *Apprendi* and *Blakely*, and for "its repeated exhumation of arguments dead and buried by prior cases." 555 U.S. at___, 129 S.Ct. at 720, 723, 172 L.Ed.2d 517 (Scalia, J., dissenting).

5. A recognized exception to the rule that a statute declared unconstitutional is wholly void, that is, when rights have vested in reliance on the statute, has no application to this case. As we observed in *Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, at ¶ 24-26, a

(1934), 128 Ohio St. 273, 191 N.E. 115, paragraph five of the syllabus ("An act of the General Assembly, which was unconstitutional at the time of enactment, can be revivified only by re-enactment").

{¶ 24} However, a close examination of this case law reveals that it is of limited relevance to the resolution of this case, because the contexts of those decisions bear little resemblance to the circumstances here. *Schneider*, on which the state's amici particularly rely, does not contain any meaningful analysis that explains the statement of law quoted above. Thus, the issue in this case regarding the possible revival of the consecutive-sentencing statutory provisions severed by *Foster* is essentially a matter of first impression for this court.

{¶ 25} At the outset, it is important to recognize the effect and definitiveness of our holdings in *Foster*. In *Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 18, we stated that the severance and excision of the consecutive-sentencing statutes "in their entirety" in *Foster* leave "no statute to establish" the presumption for concurrent sentences or to require that findings be made to impose consecutive sentences. We also referred to the severed statutes as "former," id., thus indicating that those statutes for enforcement purposes are no longer considered part of the statutory framework and have no force or effect. [6]

---

defendant sentenced pursuant to *Foster*'s holdings has notice of the sentencing range, which was not changed by *Foster*, and "never had an irrebuttable presumption of * * * concurrent sentences." Since R.C. 2929.41(A) established only a rebuttable presumption for concurrent sentences, the imposition of consecutive sentences in this situation does not affect any vested right.

6. We do not imply that the legal effect of a judicial decision "severing" a statutory provision from the remainder of the statute is to actually repeal the invalid statutory language. Only the General Assembly, the lawmaking branch of our constitutional government, has authority to repeal, as well as to enact, statutory language. Rather, a statutory provision that is held to be legally invalid, as here, becomes definitively unenforceable, and it is said to be "severed" in order to distinguish it from the remaining portion of the statute, which remains valid and enforceable. See R.C. 1.50 ("If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable").

**{¶ 26}** Another crucial consideration is that although the *Ice* decision holds that it is constitutionally permissible for a judge to engage in judicial fact-finding to impose consecutive sentences, there is no constitutional requirement that a judge make findings of fact before imposing consecutive sentences. Two of the foundations of the *Ice* holding are the long history of giving great deference to a trial court's exercise of discretion in determining whether consecutive sentences are appropriate and the common-law preference for consecutive sentences over concurrent sentences. Id., 555 U.S. at ___, 129 S.Ct. at 717-718, 172 L.Ed.2d 517. See also id. at 719 ("All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal"); *Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, at ¶ 16-18 (*Foster*'s severance of the consecutive-sentencing statutes reinstated the common-law presumption in favor of consecutive sentences); *Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, at ¶ 35 (after *Foster*, trial judges continue to have the authority to impose consecutive sentences).

**{¶ 27}** Moreover, this court in *Foster* also severed a number of statutory provisions besides the consecutive-sentencing ones on the authority of *Blakely* and *Apprendi*. The other stricken provisions are not at issue in this case, and the holdings in *Foster* regarding these provisions were not implicated in *Ice*. We are unable to say that the General Assembly would intend the consecutive-sentencing provisions to be resurrected when the other judicial fact-finding provisions, which supported the overall sentencing framework, remain constitutionally invalid and excised. It would be speculative to assume that the General Assembly would wish to reinstate only the consecutive-sentencing provisions when the other provisions struck down in *Foster* may not be reinstated also. This militates in

favor of requiring positive action by the General Assembly to indicate its intent and desire in a complicated area of the law.[7]

{¶ 28} We find it of great significance that Hodge has not cited a single Ohio case that even remotely ponders the propriety of the concept of automatic revival. We further note that none of our precedents have suggested to the General Assembly that a statute that has been held unconstitutional by this court and that has never been repealed by that body may be automatically and suddenly revived through a later court decision. Given this situation, the General Assembly has never had a particular incentive to repeal statutes that we have held unconstitutional, which further supports our reluctance to assume that the General Assembly would intend the consecutive-sentencing statutes to be reinstated, in the absence of any affirmative indications to that effect from that body.

{¶ 29} Considered in the abstract, the rule of automatic revival has the potential to disrupt expectations of predictability and finality that attach as a consequence of this court's issuing of a decision holding a statute unconstitutional. If automatic revival were recognized, parties who have acted in reliance on this court's determination of unconstitutionality may have the reasonableness of their actions called into question should this court, perhaps many years in the future, overrule the previous decision and determine that the statute held unconstitutional was constitutional after all. A conclusion in this

---

7. We are aware that the General Assembly has, since *Foster* was decided, enacted a number of bills to modify some aspects of R.C. 2929.14 without repealing the invalidated text in R.C. 2929.14(E)(4), one of the consecutive-sentencing provisions that was struck down and severed in *Foster*. (R.C. 2929.41, which contains the other consecutive-sentencing statute invalidated in *Foster*—R. C. 2929.41(A)—has not been similarly amended.) However, there has been no affirmative reenactment of R.C. 2929.14(E)(4) indicating an intent by the General Assembly that that statute was still meant to be effective. See *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 193-195, 743 N.E.2d 901 (discussing the technical requirements, including that new matter inserted into a statute must be capitalized, that indicate the General Assembly's intent in amending or enacting a statute). Consequently, the legislation amending other portions of R.C. 2929.14 has no impact on our resolution of this case.

situation that the previously stricken statute should automatically revive because it was never affirmatively repealed by an act of the General Assembly would conflict with and subvert fundamental finality interests that should normally be part and parcel of this court's definitive holding that a statute fails to comply with either the United States Constitution or the Ohio Constitution.

{¶ 30} Because there is no constitutional requirement that a judge make findings of fact before imposing consecutive sentences, the disruptive effects that would result from reviving the statutory provisions on consecutive sentences that were invalidated and severed in *Foster* need to be taken into account in this case. These practical considerations heavily tip the balance against now recognizing a concept of automatic revival in the scenario presented here.

{¶ 31} All parties involved in our criminal-justice system—defendants, prosecutors, judges, and victims of criminal activity—have justifiably relied on *Foster*'s holdings regarding consecutive sentences since that case was decided and reaffirmed by subsequent decisions. A determination that many defendants (perhaps hundreds or even thousands) who have received constitutionally acceptable consecutive sentences would nevertheless be entitled to resentencing would disrupt reasonable and settled expectations of finality.

{¶ 32} In addition, ordering resentencing in numerous cases in which consecutive sentences have been imposed in reliance on *Foster* would place an undue burden on our judicial system. It is a burden that is manifestly not outweighed by a commensurate benefit to defendants, when one considers that the sentence each received in reliance on *Foster* is not thereby constitutionally deficient.

{¶ 33} Hodge cites cases involving somewhat analogous situations from other jurisdictions that have held that a statute previously declared unconstitutional by a court decision, and not thereafter legislatively repealed, is automatically revived when the decision that held the statute unconstitutional is

overruled by a subsequent decision. In particular, Hodge relies on *Jawish v. Morlet* (D.C.App.1952), 86 A.2d 96, 97, in which the court stated:

**{¶ 34}** "There are comparatively few cases dealing squarely with the question before us, but they are unanimous in holding that a law once declared unconstitutional and later held to be constitutional does not require re-enactment by the legislature in order to restore its operative force. They proceed on the principle that a statute declared unconstitutional is void in the sense that it is inoperative or unenforceable, but not void in the sense that it is repealed or abolished; that so long as the decision stands the statute is dormant but not dead; and that if the decision is reversed the statute is valid from its first effective date."

**{¶ 35}** We are not persuaded by the reasoning of the courts in other jurisdictions that have decided cases involving the potential revival of statutes; those decisions are necessarily based on the factual contexts of the situations before them. None of the cases cited by Hodge, and no cases we have discovered in our own research, have involved a state court of last resort finding in favor of automatic revival in a situation with all the varied attributes that are implicated in this case. The overall circumstances of this case do not present a compelling justification for holding that the consecutive-sentencing statutory provisions held unconstitutional and severed in *Foster* are automatically revived without further action by the General Assembly. We accordingly decline to adopt a dormant-but-not-dead rule in the circumstances presented here.

**{¶ 36}** In view of all the above reasons, we conclude that the consecutive-sentencing statutes severed by *Foster* are not automatically revived. Accordingly, those statutes remain null and of no effect absent an affirmative act of the General Assembly. At the same time, however, we discern no constitutional impediment to the General Assembly's legislating in this area if it chooses to do so in light of the constitutional propriety of statutory provisions pertaining to the imposition of consecutive sentences expressed in *Ice*.

### III. Conclusion

{¶ 37} In summary, *Ice*'s impact on Ohio law is collateral. Our decision in *Foster* was not on direct appeal in *Ice*, and *Ice* did not directly overrule *Foster*. Nearly five years have passed since *Foster* definitively and unequivocally severed the consecutive-sentencing sections, along with other provisions, from the statutory sentencing framework, and ordered resentencing for those defendants whose cases were then on direct appeal.

{¶ 38} Numerous defendants have received consecutive sentences that have met all constitutional requirements from trial court judges acting in reliance on *Foster, Bates, Elmore,* and other precedents. Considering also that (1) judicial fact-finding is not constitutionally required in order to impose consecutive sentences, (2) none of our precedents have given notice to the General Assembly that provisions of the Revised Code that have been held unconstitutional and have been severed would be revived, perhaps many years after their enactment and subsequent invalidation, and (3) other considerations against revival strongly outweigh the considerations in favor of revival, we reject the concept of automatic revival under the circumstances presented here.

{¶ 39} For all the foregoing reasons, we hold that the decision of the United States Supreme Court in *Oregon v. Ice* does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *State v. Foster*. Because the statutory provisions are not revived, trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made.

{¶ 40} The trial court in this case did not err in imposing consecutive sentences without applying R.C. 2929.14(E)(4) and 2929.41(A), and defendants such as Hodge who were sentenced without application of the statutes are not entitled to resentencing. We affirm the judgment of the court of appeals.

Judgment affirmed.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

BROWN, C.J., dissents.

_____

**BROWN, C.J., dissenting.**

{¶ 41} I agree with the majority that *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, does not overrule this court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, regarding Ohio's consecutive-sentencing statutes, and that the issuance of *Ice* does not automatically revive or reinstate the consecutive-sentencing statutory provisions held unconstitutional in *Foster*. But *Ice* does demonstrate that the analysis used by this court in *Foster* regarding judicial fact-finding and consecutive sentences was incorrect. The majority all but concedes that it erred in holding in *Foster* that R.C. 2929.14(E)(4) and 2929.41(A) are unconstitutional because they require judicial finding of facts not proved to a jury beyond a reasonable doubt or admitted by the defendant before the imposition of consecutive sentences. Majority opinion at ¶ 10. Despite this court's error in *Foster*, however reasonable it may have been at the time it was issued, the majority essentially refuses to correct this error because it believes it is too inconvenient to do so. In so holding, the majority violates the fundamental principle of separation of powers and ignores the intent of the General Assembly. Therefore, I dissent.

## I. Separation of powers

{¶ 42} The separation of powers among the executive, legislative, and judicial branches of government is a defining principle of the American form of a free, constitutional government. See *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 39. " 'The essential principle underlying the policy of the division of powers of government into three departments is that

powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.' " Id. at ¶ 44, quoting *State ex re. Bryant v. Akron Metro. Park Dist. of Summit Cty.* (1929), 120 Ohio St. 464, 473, 166 N.E. 407. The principle of separation of powers renders this court unable to undertake those powers explicitly assigned to the legislature, yet the majority's holding ascribes the legislative power to repeal statutes to the judiciary.

{¶ 43} The General Assembly is vested with the exclusive power to enact and repeal laws, subject only to the people's power to propose, adopt, or reject laws at the polls through certain procedures defined in the Ohio Constitution. Section 1, Article II, Ohio Constitution. "This court has authority to determine whether, in a statutory enactment, the General Assembly has exceeded any of the limitations upon its legislative power which are provided for in the Constitution, and to interpret the meaning of the words used by the General Assembly in a statutory enactment; but this court does not have any authority to repeal a statute enacted by the General Assembly * * *. The power to repeal or amend a statute is vested by Section 1 of Article II of the Constitution in the General Assembly." *Columbus v. Delaware Cty.* (1956), 164 Ohio St. 605, 613-614, 59 O.O. 10, 132 N.E.2d 747.

{¶ 44} The majority contends that a declaration that a statute is unconstitutional accompanied by severance of the statute definitively "removes" or "excises"[8] the offending statute from an act and therefore that a later

8. I note that the majority refers to R.C. 2929.14(E)(4) and 2929.41(A) as having been "severed *and excised*" by *Foster*. (Emphasis added.) "Excise" is defined as "to cut out" or "remove by or as if by cutting out." Webster's Third New International Dictionary (1986) 792. The use of the term "excised" connotes that the unconstitutional statutory provision has been removed from the Revised Code and lends support to the majority's mistaken belief that severance is the equivalent of judicial repeal of a statute or statutory provision. However, this court's use of the language that an unconstitutional statute may be severed *and excised* is only recent. *Foster* itself presents the

determination that the statute was severed in error cannot reinstate the statute in the absence of reenactment by the General Assembly. In essence, the majority equates severance with repeal. Nothing in this court's jurisprudence supports that equation.

**{¶ 45}** A holding that a statutory scheme or individual statute is unconstitutional is a determination that the scheme or statute is invalid, void, and unenforceable. *Funk v. Rent-All Mart, Inc.* (2001), 91 Ohio St.3d 78, 79–80, 742 N.E.2d 127; see also *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 523, 644 N.E.2d 369. But a holding that a scheme or statute is unconstitutional does not and cannot remove the offending statutes or statute from the Revised Code. Removal of statutes from the Revised Code can be achieved only through repeal.

**{¶ 46}** A holding that an unconstitutional statute or statutory provision is subject to severance does nothing more than state that a statute within a multistatute scheme or a section of a multipart statute is invalid, void, and unenforceable. *Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 66 (holding that two statutes that are part of the General Assembly's Adam Walsh Act are unconstitutional and are severed and that "after severance, they may not be enforced"). Severance is merely a judicially imposed mechanism used to allow the constitutional provisions to remain valid and enforceable when a statutory scheme contains both unconstitutional and constitutional statutes or when a multipart statute has both unconstitutional and constitutional sections. Severance is not a judicial repeal of the offending statutory provision.

---

first instance in which a majority of this court articulates that unconstitutional statutory provisions are "severed and excised." 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 97-98. The lengthy *Foster* analysis regarding the appropriateness of severance does not provide any discussion of or support for the court's new formulation that unconstitutional statutory provisions may be "severed and excised" from the Revised Code, nor does R.C. 1.50, the statute addressing severability of Revised Code provisions, provide any support for the assertion that Ohio courts may "excise" statutory provisions.

**{¶ 47}** Because the majority's analysis of the issue of revival is premised on its belief that R.C. 2929.14(E)(4) and 2929.41(A) have been severed and excised or judicially repealed, I find that the analysis is flawed at the outset. In order to preserve the principle of separation of powers, this court must begin any analysis of the possible revival of R.C. 2929.14(E)(4) and 2929.41(A) from the premise that *Foster* declared these statutory provisions unconstitutional and unenforceable but that these provisions have not been repealed. Instead, these provisions remain part of the Revised Code and repeatedly have been included by the General Assembly as part of the statutory sentencing scheme after *Foster*. 2006 Am.Sub.H.B. No. 95, 151 Ohio Laws, Part IV, 7059; 2006 Am.Sub.H.B. No. 137, 151 Ohio Laws, Part IV, 7622; Am.Sub.S.B. No. 260, 151 Ohio Laws, Part I, 1915; Sub.S.B. No. 281, 151 Ohio Laws, Part II, 2240; Am.Sub.H.B. No. 461, 151 Ohio Laws, Part V, 9293; 2007 Am.Sub.S.B. No. 10; 2008 Sub.S.B. No. 184; 2008 Sub.S.B. No. 220; 2008 Am.Sub.H.B. No. 280; and 2008 Am.Sub.H.B. No. 130.

**{¶ 48}** The majority acknowledges that there has been no significant analysis of these issues by any Ohio courts.[9] But other courts that have considered analogous situations have held that statutes that have been declared unconstitutional and unenforceable but have not been repealed by the legislature return to effectiveness upon a later determination that the statutes were declared unconstitutional in error. See *Jawish v. Morlet* (D.C.App.1952), 86 A.2d 96, 97; see also *Pierce v. Pierce* (1874), 46 Ind. 86, 95; *State ex rel. Badgett v. Lee* (1945), 156 Fla. 291, 295, 22 So.2d 804; *McCollum v. McConaughy* (1909), 141 Iowa 172, 119 N.W. 539, 541.

---

9. The only two cases in which this court has addressed similar issues even in passing are easily distinguishable from this case. See *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 80, 25 OBR 125, 495 N.E.2d 380; *Franklin Cty. Bd. of Elections v. State ex rel. Schneider* (1934), 128 Ohio St. 273, 191 N.E. 115. In both cases, this court refers to legislation that was unconstitutional, and therefore void, at the time it was enacted. Despite the holding of *Foster*, R.C. 2929.14(E)(4) and 2929.41(A) were not unconstitutional at the time of their enactment.

**{¶ 49}** The United States Supreme Court's holding in *Ice* makes it clear that the *Foster* holding regarding the unconstitutionality of the consecutive-sentencing provisions of the comprehensive reform enacted by Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2") was in error. The judicial fact-finding required by R.C. 2929.14(E)(4) and 2929.41(A) before the imposition of consecutive sentences is not now unconstitutional nor was it ever unconstitutional. Given that R.C. 2929.14(E)(4) and 2929.41(A) have not been repealed, a conclusion that the *Foster* analysis regarding consecutive sentences was in error must result in the overruling of those infirm portions of *Foster*, the removal of our judicially imposed holding that these provisions are unenforceable, and the renewed enforceability of R.C. 2929.14(E)(4) and 2929.41(A).

## II. Intent of the General Assembly

**{¶ 50}** The majority also contends that R.C. 2929.14(E)(4) and 2929.41(A) should not be revived because it is unclear whether the General Assembly would intend these consecutive-sentencing provisions to be enforced when the other judicial fact-finding sentencing provisions that were severed in *Foster* remain unenforceable. This reasoning is unpersuasive.

**{¶ 51}** Although the majority declines to "speculate" whether the other sentencing provisions that were declared unconstitutional in *Foster* could be severed from the consecutive-sentencing provisions and the remaining provisions of S.B. 2, this is precisely the analysis the court would have been required to perform in *Foster* if the court had not erred in holding the consecutive-sentencing provisions unconstitutional. Had this court in *Foster* held the consecutive-sentencing provisions to be constitutional, but still held the other statutory provisions at issue to be unconstitutional,[10] this court would have applied the

---

10. R.C. 2929.14(B) and (C) and 2929.19(B)(2) (statutory provisions that require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury

severance test established by *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, to determine whether the unconstitutional provisions of S.B. 2 could be severed from the constitutional provisions. The *Geiger* test requires this court to consider three questions before finding severance appropriate: " '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?' " Id. at 466-467, quoting *State v Bickford* (1913), 28 N.D. 36, 147 N.W. 407, paragraph nineteen of the syllabus. Why the majority now declines to use the *Geiger* test to determine whether the constitutional consecutive-sentencing provisions of S.B. 2 may be enforced in the absence of those S.B. 2 provisions that remain unconstitutional and unenforceable after *Foster* is baffling.

{¶ 52} In S.B. 2, the General Assembly adopted a comprehensive statutory framework that established broad sentencing reforms to introduce certainty and proportionality in felony sentencing. *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 34. This court recognized that the S.B. 2 sentencing-reform statutory scheme is extremely complex. Id. at ¶ 49. Although *Foster* severed seven discrete S.B. 2 statutory subsections, including R.C. 2929.14(E)(4) and 2929.41(A), the vast majority of the S.B. 2 sentencing-reform scheme remains in place. There has been no significant action taken by the General Assembly to alter the sentencing-reform scheme in light of this court's decision in *Foster* and the unconstitutionality of several subsections. Indeed, the

---

verdict or admission of the defendant) and R.C. 2929.14(D)(2)(b) and (D)(3)(b) (statutory provisions that require judicial fact-finding before repeat-violent-offender and major-drug-offender penalty enhancements are imposed).

amendments made to the sentencing-reform scheme have not altered the fundamental scheme originally enacted in S.B. 2, and the statutory provisions declared unconstitutional and unenforceable in *Foster* have not been repealed in the course of amending the sentencing scheme.

**{¶ 53}** The continued viability of most of S.B. 2 and the lack of significant changes to the scheme after *Foster* indicate that the General Assembly's intent is to maintain as much of the S.B. 2 sentencing reform as is constitutionally permissible. This court's review of the constitutionality of a statute starts with a presumption of constitutionality based in part upon this court's deference to the legislative branch on matters of public policy. *State ex rel. Ohio Cong. of Parents and Teachers v. State Bd. of Ed.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 20, 73. Furthermore, in the context of criminal sentencing, the courts grant substantial deference to the broad authority of the General Assembly. See *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 22. That same deference should result in this court's recognizing the General Assembly's intent, conceding that its analysis in *Foster* regarding consecutive sentencing is no longer valid, overruling *Foster* in part, and declaring the constitutionally sound consecutive-sentencing provisions enforceable. Requiring the General Assembly to yet again manifest its intent to adopt the sentencing reform set forth in S.B. 2, including the consecutive-sentencing provisions, is unnecessary and places an undue burden upon the General Assembly to correct an error, albeit a reasonable one, of this court.

### III. Practical considerations

**{¶ 54}** The majority's refusal to overrule *Foster* in part following the decision in *Ice* is based upon its desire to avoid the perceived disruptive effects such a holding would cause. The majority believes that overruling *Foster* in part would entitle the many defendants who have received consecutive sentences after

*Foster* to resentencings and that those resentencings would disrupt reasonable and settled expectations of finality and place an undue burden on the judicial system.

{¶ 55} It is critical to recognize the scope of legal issues that must be decided in this case. The court must determine in this case only whether *Ice* abrogates those portions of *Foster* related to consecutive sentences and whether R.C. 2929.14(E)(4) and 2929.41(A) may now be enforced to require judicial fact-finding before the imposition of consecutive sentences. Hodge affirmatively raised these issues in the lower courts, and these issues remain pending on direct appeal. While it is appropriate to give some consideration to the potential issues that may arise regarding the effect of the ruling requested by Hodge on defendants who have received consecutive sentences after *Foster* without the statutory judicial fact-finding, and whose cases have become final, these potential issues should not dictate the outcome of this case, particularly given that this case does not involve these issues, and the court has not had the benefit of adequate briefing on them. It may well be that a partial overruling of *Foster* does not necessitate the resentencing of defendants whose consecutive sentences became final, as the majority assumes.

{¶ 56} Furthermore, matters of convenience should not dictate this court's substantive decisions. This is particularly true when the legal issue does not arise with frequency. The majority acknowledges that the statutory-revival issue before the court in this case is a matter of first impression. Majority opinion, ¶ 24. In 200 years of adjudication, this case is the first time that this court has been presented with these procedural facts and legal issues. Neither has the statutory-revival issue arisen with significant frequency in other jurisdictions, as demonstrated by the limited number of cases cited by the parties and the majority. While I do not doubt that this court's error in *Foster* may cause some inconvenience to rectify, I cannot conclude that acknowledgment of the error will

result in widespread chaos or that concerns regarding perceived chaos should prevent this court from overruling precedent that is clearly wrong.

### IV. Conclusion

{¶ 57} Although the majority concedes that its consecutive-sentencing analysis in *Foster* is no longer valid based upon *Ice,* and the majority invites the General Assembly essentially to reenact R.C. 2929.14(E)(4) and 2929.41(A) verbatim without fear of constitutional infirmity, it refuses to overrule the consecutive-sentencing portions of *Foster*. The majority makes clear that it believes that severance in effect judicially repeals a statute, regardless of whether later events undermine the severance, and that severed statutes cannot be revived without reenactment. Accordingly, the majority could still overrule the erroneous analysis of the consecutive-sentencing portions of *Foster* without reviving the severed statutes. I find it troubling that the majority refuses to overrule even the erroneous portions of *Foster.* Accordingly, I disagree with the majority's refusal to acknowledge its error in *Foster* and overrule those portions of *Foster* that have been abrogated by *Ice*.

{¶ 58} Because I also find that principles of separation of powers and deference to the will of the General Assembly require that statutory provisions that were rendered unenforceable by this court in error, but that have not been repealed, must be returned to enforceability, I dissent from the majority's holding that a statute declared unconstitutional in error cannot be revived absent reenactment by the General Assembly.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr. and Rachel Lipman Curran, Assistant Prosecuting Attorneys, for appellee.

Janet Moore, Attorney at Law L.L.C., and Janet Moore; and Ohio Justice and Policy Center, David A. Singleton, Angelina N. Jackson, and Peter C. Link, for appellant.

Kenneth W. Oswalt, Licking County Prosecuting Attorney, urging affirmance for amicus curiae Licking County Prosecuting Attorney.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Heaven DiMartino, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

_____